1                        UNITED STATES DISTRICT COURT

2                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    GUILLERMO LEMUS, INDIVIDUALLY  )  CASE NO. 10CV2061-CAB
     AND ON BEHALF OF OTHER MEMBERS )  SAN DIEGO, CALIFORNIA
5    OF THE GENERAL PUBLIC SIMILARLY)  DECEMBER 12, 2012
     SITUATED,                      )
6                      PLAINTIFFS,  )  MOTION HEARING
              VS.                   )
7                                   )
     DENNY'S INC., A CALIFORNIA     )
8    CORPORATION; AND DOES 1-50,    )
                      DEFENDANTS.   )
9    -------------------------------)
     ROLANDO LEMUS, INDIVIDUALLY    )  CASE NO. 11CV2131-CAB
10   AND ON BEHALF OF OTHER MEMBERS )  SAN DIEGO, CALIFORNIA
     OF THE GENERAL PUBLIC SIMILARLY)  DECEMBER 12, 2012
11   SITUATED, AND AS AN AGGRIEVED  )
     EMPLOYEE PURSUANT TO THE       )  MOTION HEARING
12   PRIVATE ATTORNEYS GENERAL ACT  )
     OF 2004,                       )
13                      PLAINTIFF,  )
              VS.                   )
14                                  )
     DENNY'S, INC., AND DOES 1-10,  )
15   INCLUSIVE,                     )
                      DEFENDANTS.   )
16

17

18                     TRANSCRIPT OF PROCEEDINGS

19             BEFORE THE HONORABLE CATHY ANN BENCIVENGO

20                   UNITED STATES DISTRICT JUDGE

21

22

23   OFFICIAL REPORTER:   MAURALEE A. RAMIREZ, RPR, CSR
                          333 BROADWAY, SUITE 420
24                        SAN DIEGO, CALIFORNIA 92101
                          ORDERTRANSCRIPT@GMAIL.COM
25                        619-994-2526

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFF:  WILLIAM B. SULLIVAN
                        ADAM YAECKEL
 4                      SULLIVAN LAW GROUP, APC
                        2330 THIRD AVENUE
 5                      SAN DIEGO, CALIFORNIA 92101

 6

 7   FOR THE DEFENDANT:  NANCY E. PRITIKIN
                         LITTLER MENDELSON, APC
 8                       650 CALIFORNIA STREET, 20TH FLOOR
                         SAN FRANCISCO, CALIFORNIA 94108
 9                       -AND-
                         ADAM R. ROSENTHAL
10                       LITTLE MENDELSON
                         501 WEST BROADWAY, SUITE 900
11                       SAN DIEGO, CALIFORNIA 92101

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SAN DIEGO, CALIFORNIA; WEDNESDAY, DECEMBER 12, 2012; 2:30 P.M.

2          THE CLERK:  WE ARE ON RECORD THIS AFTERNOON AS TO

3    MATTERS 10CV2061-CAB(WVG) AND 11CV2131-CAB(WVG), LEMUS VERSUS

4    DENNY'S INCORPORATED, ET AL, ON CALENDAR FOR MOTION HEARING.

5          AND AT THIS TIME, IF I COULD PLEASE HAVE COUNSEL STATE

6    THEIR APPEARANCE, BEGINNING WITH PLAINTIFF COUNSEL.

7          MR. SULLIVAN:  GOOD AFTERNOON, YOUR HONOR.  BILL

8    SULLIVAN AND ERIC YAECKEL, Y-A-E-C-K-E-L, FOR THE PLAINTIFF

9    GUILLERMO LEMUS AND THE PROPOSED CLASS.

10         MS. PRITIKIN:  GOOD AFTERNOON, YOUR HONOR.  NANCY

11   PRITIKIN AND ADAM ROSENTHAL APPEARING FOR DEFENDANT.

12         THE COURT:  YOU'RE HERE ON BOTH MATTERS?

13         MR. SULLIVAN:  YES, YOUR HONOR.

14         MS. PRITIKIN:  YES.

15         THE COURT:  ALL RIGHT.  HI.  THIS (GESTURING) WAS IN

16   ORDER.  WE MOVED IT ALL OUT HERE, SO I MIGHT BE DIGGING AROUND

17   FOR THINGS AS WE ADDRESS STUFF.  BEFORE THE COURT TODAY,

18   THERE'S QUITE A BIT OF MATERIAL AND ISSUES, AND SOME OF IT'S

19   LIKE A LAW SCHOOL EXAMINATION.

20         BUT FOR PURPOSES OF WHAT I WANT TO DISCUSS TODAY, AND

21   I'M A LITTLE MORE FOCUSED ON THE CLASS ACTION, OR NOT, CLAIM

22   REGARDING THE EXEMPT EMPLOYEES, THE MOTIONS FOR SUMMARY

23   JUDGMENT, THE CROSS-MOTIONS THERE, AS WELL AS WHETHER OR NOT IF

24   THE MERITS OF THE CASE WERE TO SURVIVE THE MOTIONS FOR SUMMARY

25   JUDGMENT, THE COMPLICATIONS OR THE IMPLICATIONS OF WHETHER

1    THERE'S A CLASS OR NOT A CLASS.  AND SO I WANT TO FOCUS ON THE

2    ROLANDO LEMUS CASE FIRST, THE EXEMPT EMPLOYEE CASE, AND ASK

3    SOME QUESTIONS ABOUT THAT.

4            THERE ARE ESSENTIALLY FOUR VIOLATIONS -- WELL, THREE

5    SUBSTANTIVE ONES AND THEN A FOURTH ONE HAS TO DO WITH

6    DISCHARGED EMPLOYEES NOT GETTING THEIR WAGES.  ALLEGED IN THAT

7    CASE, LABOR CODE VIOLATIONS IS THE FIRST ONE BEING THE SAFETY

8    SHOE REIMBURSEMENT ISSUE AND WHETHER OR NOT DENNY'S IS REQUIRED

9    BY LAW TO JUST FLATOUT PAY FOR THE EMPLOYEE SHOES.

10           THE SECOND ONE BEING THAT TO THE EXTENT THE EMPLOYEES

11   ARE PAYING FOR THEM, ARE THE DEDUCTIONS MADE WITHOUT WRITTEN

12   AUTHORIZATION.

13           AND THE THIRD ONE BEING THE USE OF A PREFERRED VENDOR

14   AND WHETHER THAT'S COERCING THE PURCHASE OF SHOES FROM SHOES

15   FOR CREWS TO DENNY'S ADVANTAGE AND AT A DISADVANTAGE TO THE

16   INDIVIDUAL EMPLOYEES.

17           THIS CASE PROCEDURALLY, A LOT OF THESE QUESTIONS I

18   THINK AND I HOPE ARE BEFORE THE NINTH CIRCUIT REGARDING THE

19   INTERPLAY BETWEEN PAGA AND RULE 23 AND WHEN YOU START IN STATE

20   COURT AND YOU GET REMOVED TO FEDERAL COURT AND WHEN YOU START

21   IN FEDERAL COURT AND WHAT GIVES YOU JURISDICTION.

22           THIS ONE IS INTERESTINGLY SITUATED THAT THE PLAINTIFFS

23   STARTED IN STATE COURT AS A CLAIM FOR THESE LABOR CODE

24   VIOLATIONS AND REQUESTING PENALTIES UNDER PAGA, THEY DID NOT

25   PLEAD IT AS A CLASS ACTION IN STATE COURT.  IT WAS REMOVED BY

1    THE DEFENDANTS ON DIVERSITY, SO THE $5 MILLION CAPITAL

2    REQUIREMENTS WERE NOT REQUIRED.  IT WAS THE 75,000 DOLLAR

3    JURISDICTIONAL LIMIT, WHICH NO ONE CHALLENGED WHEN THE

4    DEFENDANTS DID MOVE IT.

5            AND SO IT'S HERE.  AND THE QUESTION OF WHETHER OR NOT

6    YOU WOULD SATISFY CLASS CERT OR NOT ISN'T GOING TO BE A

7    JURISDICTIONAL ISSUE, I DON'T KNOW, MAYBE IT IS, BUT IT'S HERE

8    AS A PENALTIES CLAIM FOR THESE STATE LAW VIOLATIONS.  AND ONE

9    OF THE ISSUES -- AND I'M KIND OF SKIPPING AROUND, BUT ONE OF

10   THE THINGS THAT CAME TO THE COURT'S ATTENTION, AND I'D LIKE THE

11   PLAINTIFFS TO ADDRESS, IS YOU SAY IN YOUR PAPERS THAT YOU'RE

12   SEEKING ONLY PENALTIES AND NOT DAMAGES.  BUT IF IT WAS

13   CERTIFIED AS A CLASS, THE CLASS WOULD CERTAINLY BE ENTITLED TO

14   A CLAIM FOR DAMAGES, NOT JUST PENALTIES.

15           SO IT'S NOT PLED THAT WAY.  WOULD YOU HAVE TO AMEND

16   AND PLEAD A CLASS AND ALLEGE DAMAGES, OR CAN YOU ON BEHALF --

17   AS AN INDIVIDUAL ON BEHALF OF THESE UNREPRESENTED PARTIES GIVE

18   UP THEIR RIGHT TO PURSUE DAMAGES?  IF THEY PAID FOR THESE SHOES

19   AND THE COMPANY SHOULD HAVE PAID FOR THEM, GRANTED THE

20   PENALTIES ARE MORE SIGNIFICANT DOLLAR-WISE, BUT THEY WOULD

21   STILL BE ABLE TO SEEK REIMBURSEMENT FOR THE SHOES.  WHY SHOULD

22   THEY FORGO THOSE BECAUSE THE NAMED PLAINTIFF IN THIS CASE IS

23   SAYING, I DON'T WANT DAMAGES?

24           MR. SULLIVAN:  THANK YOU, YOUR HONOR.  MAY I APPROACH?

25           THE COURT:  YES.

1           *MR. SULLIVAN:* FIRST, JUST TO APOLOGIZE, MY VOICE MAY

2    WAIVER.  I'VE GOT A WEAK THROAT OF LATE.

3           *THE COURT:* SHE'LL LET YOU KNOW IF SHE CAN'T HEAR.

4           *MR. SULLIVAN:* I ALSO TEND TO SPEAK FAST AT TIMES,

5    JUST, PLEASE, FORWARNED.

6           SUCCINCTLY, YOUR HONOR, THERE IS ANOTHER CLASS ACTION

7    WHICH I BELIEVE IS BEING DEFENDED BY THE LITTLER MENDELSON

8    FIRM, WHICH AS TO THE EXEMPT EMPLOYEES, THOSE MANAGERS --

9    EXCUSE ME, ASSISTANT MANAGERS, WHICH WE CONTEND PAGA VIOLATIONS

10   TO WHICH OCCURRED, THERE IS A PRECEDENT PROPOSED CLASS ACTION,

11   I BELIEVE IT'S IN STATE COURT, AND I'LL PROVIDE A REASON WHY.

12   AND FORGIVE ME, THE NAME OF IT ESCAPES ME.  I BELIEVE

13   MS. PRITIKIN AND MR. ROSENTHAL ARE DEFENDING IT.

14          WHEN WE APPROACHED MY CLIENT, WHO IS THE BROTHER OF

15   GUILLERMO LEMUS, WE EXPLAINED THE SITUATION TO HIM, AND HE DOES

16   HAVE A CONCERN JUST THAT EVERYTHING WAS PLED.  I SAID

17   TACTICALLY THAT THE PLAINTIFFS' FIRM REPRESENTING THE PROPOSED

18   CLASS IN THE PRECEDENT CLASS IS VERY GOOD, KNOWS WHAT THEY'RE

19   DOING, AND I'LL SAY IT ON THE RECORD, THE LITTLER FIRM IS

20   EXCELLENT.  THEY KNOW WHAT THEY'RE DOING.

21          I DID EXPLAIN THAT A PAGA CLAIM HAD NOT BEEN MADE, AND

22   IN MY EXPERIENCE, I BELIEVE IT'S SPIRO MOSS THAT HAS THE

23   PRECEDENT CLAIM.  THEY DID NOT PLEAD UNDER PAGA.

24          THE ONLY OTHER PERHAPS RELEVANT ISSUE IS WHEN WE SUED

25   ON BEHALF OF GUILLERMO LEMUS, DENNY'S WAS A CALIFORNIA

1  CORPORATION.  I DON'T WANT TO PRESUME, BUT I BELIEVE IN PART

2  BECAUSE OF THE GUILLERMO LEMUS ACTION, DENNY'S INCORPORATED IN

3  FLORIDA, AND I THINK THAT'S WITHIN A COUPLE DAYS BEFORE WE

4  FILED THE ROLANDO IN THIS ACTION.  SO JUST SUMMARILY, WE DID

5  FILE WITH FULL KNOWLEDGE THAT THERE WAS A PROPOSED CLASS ACTION

6  BEING BROUGHT ON BEHALF OF THE ASSISTANT MANAGERS.  THAT

7  PROPOSED CLASS ACTION DID NOT HAVE PAGA PENALTIES.

8        *THE COURT:*  BUT THAT CLASS ACTION WOULD ADDRESS THE

9  SAME MERIT, LABOR LAW VIOLATION REGARDING THE SHOES AND ALL THE

10  ASSERTED CLAIMS HERE?

11        *MR. SULLIVAN:*  THINK SHE'S --

12        *THE COURT:*  BECAUSE TO ME, THE INEFFICIENCY OF HAVING

13  TWO COURTS ADDRESS.  IT'S A THRESHOLD QUESTION.  YOU DON'T GET

14  YOUR PENALTIES UNLESS YOU PROVE THE VIOLATIONS.  AND IF SOME

15  OTHER COURT IS ADDRESSING THE VIOLATIONS AS A CLASS ACTION,

16  THEN I'M HESITANT TO WANT TO DO IT HERE BECAUSE WHAT IF WE GET

17  CONTRADICTORY RESULTS AND YOU GET A PENALTY FOR SOMETHING THAT

18  ANOTHER COURT DOESN'T FIND WASN'T EVEN A VIOLATION, WHOSE GOT

19  PRIORITY?  IS IT JUST A RACE AS TO WHO GETS DONE FIRST.  AND

20  YOU DON'T HAVE A CLASS, SO --

21        *MR. SULLIVAN:*  I'M SORRY, YOUR HONOR, TO INTERRUPT.  I

22  DON'T SEE IT AS A RACE.  AND AGAIN, I DON'T MEAN TO BEAT UP

23  NANCY, BUT IT MAY BE BETTER SET FOR HER TO ANSWER.  WE WERE

24  AWARE OF THE PRECEDENT ACTION.

25        FROM MY UNDERSTANDING, THERE WAS NO CROSSOVER AND FROM

1    MY UNDERSTANDING, WHAT THEY ARE PLEADING, THE SPIRO MOSS FIRM,

2    IS SOMETHING MY CLIENT COULD NOT CONFIRM.  IT'S ESSENTIALLY AN

3    OFF-THE-CLOCK ACTION.  MY CLIENT, AND WE SPOKE TO SEVERAL

4    OTHERS IN HIS STATUS, DID NOT BELIEVE THAT -- AS MUCH AS WE

5    EXPLAINED IT TO HIM, DID NOT BELIEVE IT WAS COGNIZABLE BASED

6    UPON HIS INFORMATION.

7         *THE COURT:*  IS THAT THE WONG V. DENNY'S ACTION IN SAN

8    MATEO?  BECAUSE THAT ONE TO THE NONEXEMPT EMPLOYEES LOOKS LIKE

9    IT'S ALREADY ADDRESSING THE NOT PAID FOR ATTENDANCE AT MEETINGS

10   CLAIM, WHICH MEANS IT'S DUPLICATIVE, THEN WE WOULD HAVE TWO

11   CLASSES WITH THE SAME CLAIM.

12        *MS. PRITIKIN:*  DO YOU WANT ME TO ADDRESS THOSE, YOUR

13   HONOR?

14        *THE COURT:*  JUST HELP ME HERE WITH HOW MANY YOU ALL

15   ARE BEING SUED FOR DIFFERENT THINGS.

16        *MS. PRITIKIN:*  I KNOW IT'S ONE OF THE THINGS MY CLIENT

17   HAS STRUGGLED WITH BECAUSE THESE LAWSUITS GET BROUGHT, THEY'RE

18   BROUGHT PRETTY IRRESPONSIBLY.  THE WONG CASE WAS DISMISSED.

19        *THE COURT:*  OKAY.

20        *MS. PRITIKIN:*  THE OTHER CLAIM THAT -- THE OTHER CASE

21   IS A MISCLASSIFICATION CASE THAT VERY BROADLY PLEADS A LOT OF

22   THINGS, AND THAT CASE IS PENDING IN STATE COURT.

23        *THE COURT:*  IS THE SUBJECT MATTER OF THE EXEMPT

24   EMPLOYEE CLAIM CASE HERE, THIS STUFF REGARDING THE SHOES --

25        *MS. PRITIKIN:*  THERE'S NOT AN EXPRESS SHOE CLAIM.

1   HOWEVER, IT'S A VERY BROAD CLAIM AS TO ALL KINDS OF LABOR LAW

2   VIOLATIONS UNDER THE CALIFORNIA LABOR CODE, SO I CAN'T SAY THAT

3   IT DOES NOT INCLUDE THAT.  WE'RE IN THE VERY EARLY STAGES OF

4   THE LITIGATION, SO I HAVEN'T SEEN COMPLETELY WHAT'S THERE.  BUT

5   THE PLEADING IS BROAD ENOUGH TO COVER PRETTY MUCH ANYTHING THE

6   WAY IT STANDS RIGHT NOW.  BUT THE CLASS CERTIFICATION MOTION IS

7   BEING HEARD THIS SUMMER.

8          *THE COURT:*  SO THAT THE GENESIS OF ALL THIS WAS IF I

9   WERE TO CERTIFY A CLASS HERE, THE CLASS IS GOING TO BE ENTITLED

10  TO DAMAGES AND YET IT'S NOT PLED IN THE COMPLAINT.  SO DO WE GO

11  BACK AND AMEND?  DO I CERTIFY CLASS AND LET YOU AMEND TO

12  RECERTIFY?  I NEVER HAD A CASE WHERE THE PLAINTIFFS HAVEN'T

13  PLED SOMETHING AND THE DEFENDANTS HAVE SAID, YOU HAVE TO PROVE

14  A CAUSE OF ACTION YOU HAVEN'T PLED TO BE HERE.  THEY DON'T NEED

15  IT TO BE HERE.  THEY'RE HERE ON DIVERSITY.  IF IT'S NO LONGER

16  PROCEDURAL, IF HAVING TO ASSERT IT WOULD PROTECT THE DAMAGES

17  CLAIM OF THE NON-PRESENT CLASS MEMBERS.

18          *MR. SULLIVAN:*  IS IT TO ME, YOUR HONOR, OR...?

19          *THE COURT:*  SOMEBODY, I DON'T KNOW.

20          *MR. SULLIVAN:*  ONE THING, AND THE COURT MAY BE SHOCKED

21  WHERE I AGREE WITH PRITIKIN ON, SOMETIMES THESE CASES ARE

22  BROUGHT IRRESPONSIBLY.  I'VE HAD AN ISSUE IN THE PAST WITH

23  ACTING RESPONSIBLY OR IRRESPONSIBLY.  I HAVE A VERY HIGH

24  THRESHOLD MAKING SURE WE'RE COMPLIANT.  AS SOON AS WE LEARNED

25  ABOUT THAT PRIOR ACTION, AND IT IS VERY BROADLY PLED, ALTHOUGH

1  I DISAGREE IT'S A NEW CASE.  IT WAS FILED PRIOR TO THE ROLANDO

2  LEMUS CASE, SO IT'S SEVERAL YEARS OLD.

3       MY UNDERSTANDING, THERE IS NO CROSSOVER AND IN TERMS

4  OF ANSWERING YOUR DIRECT QUESTION, WOULD DAMAGES BE PLED, I

5  WOULD SAY, NO, YOUR HONOR, BECAUSE THE PRIMARY THINGS HERE DO

6  NOT ALLOW FOR DAMAGES.  2802 IS A REIMBURSEMENT ISSUE.  AND THE

7  221 IS PENALTIES ITSELF.  SO WE WERE SATISFIED AT THE TIME WE

8  BROUGHT THE CLAIM THAT PAGA WOULD ADDRESS THE MAJORITY, IF NOT

9  ALL, OF MY CLIENT'S CONCERNS.

10       AND AGAIN, I'M SURPRISING MYSELF TO AGREE WITH

11  MS. PRITIKIN.  SOMETIMES ON THE PLAINTIFF'S SIDE, YOU SEE SOME

12  IRRESPONSIBLE PLEADINGS.  WE TAKE SOME PRIDE IN PLEADING

13  SPECIFICALLY AND IN A LIMITED SENSE.  SO IF THERE'S ANY -- IF

14  IT'S LIMITED, I APOLOGIZE, BUT IT WAS INTENTIONAL.

15       *THE COURT:*  THAT'S FINE.  SO IT'S YOUR POSITION THAT

16  THE SPECIFIC LABOR CODE VIOLATIONS THAT ARE AT ISSUE IN THE

17  EXEMPT EMPLOYEE CASE WOULDN'T RESULT IN DAMAGES, THEY WOULD

18  ONLY BE PENALTIES.  SO YOU'RE NOT REALLY FOREGOING DAMAGES,

19  THERE JUST AREN'T DAMAGES AVAILABLE.

20       *MR. SULLIVAN:*  THAT'S CORRECT, YOUR HONOR, WITH THE

21  ROLANDO LEMUS CASE.  NOW WITH RESPECT TO THE GUILLERMO LEMUS

22  CASE, AND I DON'T WANT TO --

23       *THE COURT:*  NO, WE'RE STICKING WITH THE EXEMPLAR.

24       *MR. SULLIVAN:*  WITH THE ROLANDO LEMUS CASE, IT'S A

25  LIMITED SENSE.  MR. ROLANDO LEMUS DOES NOT AGREE WITH THE

1   PLEADINGS IN THE PREDECESSOR CASE THAT I SPOKE ABOUT.

2           NANCY, WHAT'S THE NAME OF THAT?  I'M SORRY, JUST SO I

3   CAN...

4           *MR. ROSENTHAL:*  PAIAVA.

5           *THE COURT:*  I'M SORRY?

6           *MS. PRITIKIN:*  PAIAVA, P-A-I-A-V-A.

7           *MR. SULLIVAN:*  SO WHEN I EXPLAIN THE PAIAVA CASE TO

8   MR. ROLANDO LEMUS, HE DID NOT BELIEVE THAT HE COULD SUPPORT

9   THAT OR THAT IT WOULD BE A SUPPORTED CLAIM.  HIS CONCERNS ARE

10  ADDRESSED WITHIN OUR PAGA COMPLAINT AS PLED.

11          *THE COURT:*  OKAY.  ALL RIGHT, THEN FIRST, I WAS

12  LOOKING AT THE CLASS CERTIFICATION ISSUE AND WHETHER OR NOT A

13  CLASS SHOULD, NEEDS TO BE CERTIFIED IN THE EXEMPT EMPLOYEE

14  MATTER IN THE ROLANDO LEMUS CASE.  AND MOST OF THE ARGUMENT IN

15  THERE ABOUT THE MATTERS OF CERTIFICATION REALLY WENT TO THE

16  MERITS OF THE CASE, AND SO I TURNED INSTEAD TO THE MOTIONS FOR

17  SUMMARY JUDGMENT AND FOUND MYSELF WONDERING ABOUT REALLY THE

18  MERITS OF THE CASE AND IF IT DOESN'T SURVIVE SUMMARY JUDGMENT,

19  THEN I DON'T EVEN HAVE TO ADDRESS WHETHER THERE SHOULD BE A

20  CLASS OR NOT OR WHETHER OR NOT PAGA IS CONSTITUTIONAL, WHICH IS

21  AN ISSUE I WOULD REALLY NOT GO TO IF I DON'T HAVE TO.

22          AND I HAVE JUST A COUPLE QUESTIONS ABOUT THE MERITS

23  BECAUSE THEY ARE CROSSCLAIMS.  SO LET'S START WITH THE INITIAL

24  QUESTION OF WHETHER OR NOT THERE IS A REQUIREMENT FOR DENNY'S

25  UNDER SECTION 2802 TO PAY FOR THE SAFETY SHOES.  AND THE COURT

```
1    IN READING 2802 DOES SEE IT AS A VERY BROAD AUTHORIZATION

2    REGARDING PAYMENT -- AND NOW IS WHEN I'M NOT GOING TO BE ABLE

3    TO FIND MY MATERIALS.  BUT IT TALKS ABOUT THE EMPLOYEES BEING

4    INDEMNIFIED FOR EXPENSES NECESSARILY INCURRED IN THE

5    PERFORMANCE OF THEIR JOBS.

6         WELL, THAT'S AWFULLY BROAD.  I MEAN, DRIVING TO WORK

7    IS AN EXPENSE YOU INCUR TO PERFORM YOUR JOB, EATING LUNCH IS AN

8    EXPENSE, BUT YOU DON'T GET REIMBURSED FOR THAT.  SO THE STATUTE

9    ON ITS FACE, I DON'T THINK CREATES A LIABILITY TO DENNY'S TO

10   PAY FOR THE SHOES.

11        SO THEN YOU HAVE TO LOOK AND THINK, AS THEY CORRECTLY

12   POINT OUT, TO WELL, WHAT LAW WOULD GOVERN WHETHER OR NOT THEY

13   NEED TO PAY FOR THESE SHOES.  AND THE PREVAILING FEDERAL OSHA

14   STANDARD SAYS IT'S NOT SOMETHING THE EMPLOYER HAS TO PAY FOR.

15        THEY THEN CITE TO SOME AUTHORITY REGARDING CALIFORNIA

16   HAVING CONSIDERED THAT AT ONE POINT AND WITHDRAWING ADDING THAT

17   IN LIGHT OF WHAT YOU CALL "THE SHOE DIRECTIVE" AND WHICH WOULD

18   INDICATE IN THE ABSENCE OF SOME OTHER CALIFORNIA RULE,

19   CALIFORNIA IS ADOPTING THE FEDERAL STANDARD, AND THAT'S THE

20   PREVAILING STANDARD THAT WOULD SAY THAT THIS IS NOT AN EXPENSE

21   THE EMPLOYER HAS TO BEAR.

22        AND YOU REFERRED BACK TO SOMETHING THAT PREDATED BOTH

23   THOSE THINGS.  AND SO HELP ME WITH THAT TO EXPLAIN WHY THIS

24   FEDERAL OSHA REQUIREMENT DOES NOT REQUIRE THAT THE EMPLOYER PAY

25   FOR THIS PARTICULAR TYPE OF EQUIPMENT AND SO WHY SHOULD THEY BE
```

1  REQUIRED TO DO SO.

2          *MR. SULLIVAN:*  SURE, YOUR HONOR.  I BELIEVE THERE WAS

3  A MISTAKE OR AN ERROR COMING FROM DENNY'S WITH RESPECT TO HOW

4  THE CAL OSHA TREATED IT.  EVER SINCE MAY OF 2011, THEY'VE BEEN

5  ASKING FOR COMMENTS ON, I BELIEVE, IT'S REFERRED TO AS

6  LEGISLATURE OR BILL 3330.  IT'S PROPOSED STATE STANDARD TITLE 8

7  DIVISION 1, CHAPTER 4, AND IT WOULD BE SECTION 3380.1.  I DON'T

8  BELIEVE THAT'S IN OUR PAPERS, YOUR HONOR, BUT THAT'S JUST TO

9  ADDRESS YOUR QUESTION.  BUT IT IS IN SOMETHING THAT THE CAL

10  OSHA HAS ADDRESSED AND SAID WE'RE GOING TO TAKE TO FED, WHICH

11  THEY'RE WAITING FOR MORE COMMENTS, WHICH IS TYPICAL.  I DO A

12  LOT OF OSHA CASES, BECAUSE THERE IS AN IMPACT UPON BOTH

13  EMPLOYERS AND EMPLOYEES.

14          BUT TO ANSWER YOUR QUESTION DIRECTLY, YOUR HONOR.

15  THIS GOES BACK TO THE *BENDIX* CALIFORNIA SUPREME COURT AND *THE*

16  *OAKLAND POLICE OFFICER'S ASSOCIATION* AND IS ADDRESSED BY LABOR

17  CODE SECTION 6401, WHICH IS THE OSHA STANDARD.  THE OAKLAND

18  POLICE OFFICER'S CASE IS PARTICULARLY ILLUSTRATIVE, ALTHOUGH

19  THE *BENDIX* CASE IS PROBABLY MORE CONTROLLING COMING FROM THE

20  CALIFORNIA SUPREME COURT.

21          BUT *BENDIX* CONSIDERED THE POLICE OFFICER'S CASE AND

22  ANALOGIZED IT TO WHAT WE'RE DEALING WITH HERE, WHICH IS I DON'T

23  THINK *BENDIX* PARTICULARLY RELATED TO YOUR ANALOGY, YOUR HONOR,

24  BUT I DO BELIEVE THE OAKLAND POLICE OFFICER'S CASE DID.  YES,

25  MILEAGE OR YOU NEED TO EAT A GOOD BREAKFAST BEFORE YOU START

1    WORK, IS THAT COMPENSABLE?  NO.  BUT IF THESE ARE THINGS

2    REQUIRED AT YOUR JOB BY YOUR JOB, THEY NEED TO BE PAID BY THE

3    EMPLOYER.

4          THE REASON, ESPECIALLY IN THE STATE OF CALIFORNIA IS

5    AS FOLLOWS, THE STATE OF CALIFORNIA HAS THE RIGHT TO AND HERE

6    IS BEING MORE PROTECTIVE TOWARDS ITS EMPLOYEES.  HERE, WHAT

7    WE'RE DEALING WITH, LESS IN THE ROLANDO IN THIS CASE, BUT WE'RE

8    DEALING WITH RELATIVELY LOW-PAID EMPLOYEES, PEOPLE THAT AREN'T

9    MAKING PERHAPS THE MEAN AVERAGE.  WHAT WE'RE DEALING WITH HERE,

10   THE UNIQUE FACT IS THE REQUIREMENT THAT YOU NEED TO BUY NONSLIP

11   SHOES AS REQUIRED BY CAL OSHA EVERY SIX MONTHS, SO THAT WE,

12   DENNY'S, CAN GET A $10,000 --

13        *THE COURT:*  I SAW NOWHERE, NOWHERE WHERE IT SAID IN A

14   WRITTEN POLICY -- NOW YOU'VE IMPLIED THAT IS THE PRACTICE, BUT

15   THERE IS NO WRITTEN POLICY THAT SAYS AN EMPLOYEE MUST BUY A

16   PAIR OF SHOES EVERY 6 MONTHS.  THERE'S A POLICY THAT SAYS THAT

17   THEY HAVE TO HAVE BLACK, LEATHER UPPER, NONRUBBER, NONSTICK

18   SHOES, NONSKID SHOES, AND THERE IS A POLICY, A WRITTEN POLICY

19   THAT SAYS YOU CAN BUY THEM THROUGH THIS SOURCE.

20        BUT I DON'T WANT TO GET INTO THE SOURCE THING YET

21   RIGHT NOW.  I WANT TO KNOW THE LAW THAT YOU'RE RELYING ON THAT

22   SAYS THEY ARE RESPONSIBLE FOR PROVIDING THEM.  THAT'S CONTRARY

23   TO THE FEDERAL AUTHORITY THEY GAVE ME THAT SAYS THEY'RE NOT.

24        *MR. SULLIVAN:*  THANK YOU, YOUR HONOR.  THAT'S *BENDIX*

25   AND THE CALIFORNIA'S POLICE OFFICERS ASSOCIATION.

1            *THE COURT:  BENDIX* IS DISTINGUISHABLE.

2            *MR. SULLIVAN:*  HOW, YOUR HONOR?

3            *THE COURT:  BENDIX* IS THE DIVISION OF OCCUPATIONAL

4    SAFETY AND HEALTH TELLING THE COMPANY YOU HAVE TO PROVIDE THESE

5    THINGS.

6            *MR. SULLIVAN:*  AND PAY FOR THEM.

7            *THE COURT:*  AND PAY FOR THEM.  AND THEY ARE HEAVY

8    LEATHER GLOVES ONLY USED AT WORK TO MOVE WOOD THAT CUTS AND

9    HURTS YOUR FEET.  WHAT ELSE ARE YOU GOING TO DO WITH THEM?

10           *MR. SULLIVAN:*  WELL, I RESPECTFULLY DISAGREE, YOUR

11   HONOR.  I BELIEVE, AND I CAN'T POINT IT OUT SPECIFICALLY, BUT

12   IF WE HAVE *BENDIX* HERE, I'D BE HAPPY TO PROVIDE YOU A CITE.

13   THE COURT TALKS ABOUT HOW YOU CAN WEAR THEM WHEREVER AND IT

14   ISN'T A MATTER OF WHETHER YOU'RE JUST LIMITING YOURSELF TO

15   THAT.  AND I BELIEVE THE *BENDIX* CASE DISTINGUISHED IN SOME

16   CASES WENT FURTHER THAN OAKLAND POLICE OFFICER'S ASSOCIATION

17   BECAUSE OF THAT.

18           OBVIOUSLY IN OAKLAND POLICE OFFICER'S ASSOCIATION,

19   THERE WAS A GUN INVOLVED.  YOU'RE NOT HOPEFULLY GOING TO USE A

20   GUN OUTSIDE OF YOUR EMPLOYMENT.  BUT *BENDIX* DID DISCUSS THE

21   FACT THAT REGARDLESS WHETHER YOU CAN USE IT OUTSIDE OR NOT, IF

22   THEY'RE NECESSARY FOR THE SAFETY OF THE EMPLOYEE DURING THE

23   EMPLOYEE'S JOB, THEY NEED TO BE COMPENSATED BY THE EMPLOYER.

24           *THE COURT:*  AND...

25           *MR. SULLIVAN:*  AND THAT'S JUST TO SUMMARIZE.  AND

1    PLEASE INTERRUPT ME.  THAT'S WHAT DISTINGUISHES CALIFORNIA FROM

2    THE FED STANDARD BECAUSE YOU CAN BE MORE PROTECTIVE.  AND HERE,

3    THAT'S WHAT THEY'RE DOING.  THEY RECOGNIZE THAT CALIFORNIA --

4         *THE COURT:*  BUT THIS ISN'T CALIFORNIA TELLING DENNY'S,

5    YOU HAVE TO DO THIS.  THIS IS AN EMPLOYEE SAYING, DENNY'S

6    SHOULD BE PAYING THIS FOR ME, AND THERE IS NO LAW THERE THAT

7    YOU'RE GOING TO.  WHERE IS IT IN THE CALIFORNIA LAW THAT IT

8    SAYS THESE KINDS OF SHOES ARE SAFETY EQUIPMENT MEANT TO BE

9    COVERED?

10        *MR. SULLIVAN:*  LABOR CODE §6401 ET SEQ, BUT

11   SPECIFICALLY 6401 WHICH IS DISCUSSED BY THE *BENDIX* CASE, AND I

12   BELIEVE THE OAKLAND POLICE OFFICER'S CASE.  BUT *BENDIX* DOES

13   TALK ABOUT THE FACT THAT REGARDLESS OF WHETHER THESE GLOVES CAN

14   BE WORN OUTSIDE OR NOT, THEY'RE NECESSARY FOR YOUR EMPLOYMENT.

15   AND THAT'S WHAT LINES UP WITH THE CASE HERE.  THEY'RE

16   NECESSARY.

17        I WOULD BE HAPPY, AND I BELIEVE I WILL LATER, ADDRESS

18   HOW DENNY'S GETS THIS BENEFIT FROM IT.  BUT IT'S UNDISPUTED

19   HERE, THEY'RE REQUIRED TO WEAR NONSLIP SHOES, AND THEY'RE

20   REQUIRED TO NONSLIP SHOES BECAUSE CAL OSHA REQUIRES THEM TO

21   WEAR NONSLIP SHOES, EVERY EMPLOYEE.  AND REGARDLESS OF WHETHER

22   WE'RE TALKING ABOUT THIS POLICY OR NOT, THE REASON WHY I THINK

23   *BENDIX* CONTROLS, YOUR HONOR, IS BECAUSE THESE AGAIN ARE NOT

24   WELL-PAID EMPLOYEES.

25        *THE COURT:*  THIS IS GOING SORT OF OUTSIDE THE REALM OF

1    THE PAPERS, BUT ANY FAST FOOD RESTAURANT I'VE EVER BEEN IN, THE

2    EMPLOYEES ALL WEAR BASICALLY THOSE SAME UGLY, BLACK SHOES,

3    AND IS THERE ANY OTHER CASE IN CALIFORNIA THAT'S HELD THAT

4    MCDONALD'S, BURGER KING, ALL PEOPLE, THE IN-N-OUT, ANY OTHER

5    RESTAURANT THAT WOULD REQUIRE THEIR EMPLOYEES TO WEAR SIMILAR

6    SHOES BECAUSE THEY'RE WORKING IN ENVIRONMENTS THAT CAN BE WET

7    AND SLIPPERY IS REQUIRED TO PAY FOR THOSE SHOES FOR THEIR

8    EMPLOYEES, THAT YOU'RE AWARE, JUST ANY OTHER RULING IN

9    CALIFORNIA.

10          MR. SULLIVAN:  A PUBLISHED CASE, NO, YOUR HONOR.  WE

11   SETTLE THEM QUITE OFTEN.  I'VE SETTLED MAYBE EIGHT OR NINE

12   WITHIN THE LAST TWO YEARS, AND IT'S USUALLY BASED UPON THE

13   BENDIX.  AND AGAIN, OBVIOUSLY I RESPECTFULLY DISAGREE WITH YOUR

14   HONOR, BUT BENDIX, IF YOU READ IT, DOESN'T PROVIDE ANY

15   DISTINGUISHMENT.

16          IT DOESN'T SAY, HEY, JUST BECAUSE NOBODY HAS ASKED

17   THESE OTHER EMPLOYERS TO DO IT.  IT GOES DOWN TO THE THEORY YOU

18   PAY FOR THEM, YOU INCORPORATE THAT COST DOWN THE LINE, AND

19   FOLLOWING YOUR HONOR'S ANALOGY, IF EVERYBODY IS REQUIRED TO DO

20   IT, YOU'RE NOT GOING TO GET A BUSINESS ADVANTAGE IF YOU REQUIRE

21   YOUR EMPLOYEES TO WEAR SUCH SHOES WHILE YOU PAY FOR THEM.

22          THE COURT:  OKAY.

23          DO YOU WANT TO RESPOND ON THAT ISSUE?

24          MS. PRITIKIN:  LET'S START WITH THE BENDIX CASE.  THE

25   BENDIX CASE WAS IN 1979, A CALIFORNIA SUPREME COURT CASE THAT--

1          *THE COURT:*  WOULD YOU PULL THE MIC A LITTLE CLOSER.

2          *MS. PRITIKIN:*  SORRY.

3          *THE COURT:*  THAT'S OKAY.

4          *MS. PRITIKIN:*  THAT WAS DECIDED BEFORE THE *GADE* CASE.

5          *THE COURT:*  YES.

6          *MS. PRITIKIN:*  AND BEFORE *INDUSTRIAL TRUCK.*  AND AT

7    THE END OF THE DAY, OSHA PREEMPTS THIS FIELD, AND 6401 IS JUST

8    A GENERAL STATUTE THAT SAYS ABOUT SAFETY EQUIPMENT THAT HAS TO

9    BE PROVIDED, AND THE REGULATIONS IN CALIFORNIA IDENTIFY

10   SPECIFICALLY WHAT HAS TO BE PAID FOR, WHICH DOES INCLUDE THE

11   SHOES.  AND WHEN COUNSEL MADE REFERENCE TO A PROPOSED STANDARD,

12   THAT'S THE PROCESS BY WHICH A STATE CAN GET OSHA'S APPROVAL TO

13   HAVE MORE REQUIREMENTS THEN OSHA REQUIRES.

14          THEY STARTED THAT PRACTICE AND STOPPED IT.  APPARENTLY

15   THEY STARTED IT AGAIN, BUT IT IS STILL A PROPOSED STANDARD.  IT

16   IS NOT THE LAW.  THERE HAS BEEN NO POLICY VIOLATION BY HAVING

17   THE POLICY IN PLACE WHERE YOU HAVE SHOES AND OUR DECLARATION

18   SHOWS THAT PEOPLE WEAR THEM OUTSIDE OF WORK, THAT THEY WEAR

19   THEM TO OTHER JOBS, THAT SOME OF THEM BUY IT FROM SHOES FOR

20   CREWS, SOME GO TO KMART OR OTHER PLACES TO GET THEIR SHOES,

21   THAT THEY'RE NOT ANY KIND OF SPECIAL EQUIPMENT IN THE WAY THAT

22   THE CASES RECOGNIZE AN EMPLOYER'S OBLIGATION TO PROVIDE THEM.

23          AND THERE IS NO CASE THAT SAYS THAT OSHA DOESN'T

24   PREEMPT THIS FIELD, AND WHETHER OR NOT THE CALIFORNIA COURTS

25   THINK IT DOES OR IT DOESN'T, AS A MATTER OF LAW, THE OSHA DOES

1   PREEMPT.  THE CASE LAW IS VERY CLEAR ABOUT THAT.  AND IN ORDER

2   TO GET AROUND THE OSHA REQUIREMENTS WHICH EXPRESSLY SAY YOU

3   DON'T HAVE TO PAY FOR THESE KINDS OF SHOES, YOU HAVE TO GO

4   THROUGH THE PROCESS.  AND CALIFORNIA HAS NOT YET GONE THROUGH

5   THAT PROCESS.

6           *MR. SULLIVAN:*  AND A BRIEF RESPONSE, YOUR HONOR?

7           *THE COURT:*  YES.

8           *MR. SULLIVAN:*  JUST TO CLEAR THINGS UP, FIRST, WITH

9   RESPECT TO THE $10,000, WHICH I KNOW YOU DON'T WANT TO TALK

10  ABOUT IT, BUT -- OR AT LENGTH, IT'S EXHIBIT 5 TO OUR MOTION

11  SHOWS THE SHOES FOR CREWS POLICY.  WHAT WE'RE ARGUING

12  EXPLICITLY IS IT'S UNDISPUTED THERE IS A BENEFIT TO DENNY'S,

13  AND THAT GOES MORE TO THE COERCION.  BUT THERE IS -- THERE WAS

14  ALSO TESTIMONY THAT THERE WAS, WHAT MY CLIENT FELT WAS SOME

15  COERCION, YOU NEED TO BUY THEM EVERY SIX MONTHS AND THERE'S

16  ALSO TESTIMONY IT'S BECAUSE WE'RE GOING TO GET A BENEFIT.

17          WITH RESPECT TO THE CURRENT FEDERAL STANDARD SET FORTH

18  IN DENNY'S PAPERS, IT JUST RECENTLY SWITCHED.  LESS THAN A YEAR

19  AGO, THIS DIRECTIVE CAME DOWN.  SO IF YOU'RE FOLLOWING THE LINE

20  OF WISDOM HERE, AND WE PROVIDED THIS IN OUR PAPERS, PRIOR TO

21  THAT CHANGE, THERE WAS DIRECT LANGUAGE SAYING CERTAIN THINGS

22  LIKE NONSLIP SHOES NEED TO BE PAID BY THE EMPLOYER.  SO IF

23  YOU'RE GOING TO FOLLOW THE LINE OF THINKING, THAT, OKAY --

24          *THE COURT:*  POINT ME TO THAT DIRECT LANGUAGE AND WHERE

25  I FIND THAT.

1           *MR. SULLIVAN:*  SURE.

2           *THE COURT:*  BECAUSE THAT'S A HOLE FOR ME.  I

3    UNDERSTAND, AS THEY CALL IT, THE SHOE DIRECTIVE DIDN'T COME

4    DOWN UNTIL FEBRUARY 2011, SO THE LAW BEFORE THAT WAS UNCLEAR.

5           *MR. SULLIVAN:*  CAN YOU GIVE ME ONE SECOND, YOUR HONOR?

6           *THE COURT:*  YES.

7           *MS. PRITIKIN:*  BEFORE THEY -- BEFORE THE -- I'M SORRY,

8    I MISSED THE BEGINNING OF YOUR...

9           *THE COURT:*  THIS THING THAT YOU'VE CALLED THE SHOE

10   DIRECTIVE, THE FEDERAL OSHA STATEMENT THAT THE ANALYSIS -- THE

11   KIND OF SHOES AT ISSUE IN THIS CASE ARE NOT AN EMPLOYER PAID

12   RESPONSIBILITY ISSUED IN FEBRUARY OF 2011.  FROM MY READING OF

13   THE PAPERS, IT APPEARED TO ME THAT PRIOR TO THAT THERE WERE

14   SPECIFIC THINGS CALLED OUT.  THE SHOES WERE NOT ADDRESSED ONE

15   WAY OR OTHER, AND THIS CLARIFIED IN FEBRUARY 2011 THAT THESE

16   SHOES WERE NOT INTENDED TO BE COVERED LIKE STEEL TIP OR

17   METATARSAL PROTECTED SAFETY SHOE, THAT INVOLVED JOBS WHERE YOU

18   COULD HAVE CRUSHING AND DROPPING AND ALL THOSE ISSUES.

19          *MS. PRITIKIN:*  RIGHT.  IT CONFIRMED WHAT MOST

20   EMPLOYERS BELIEVED WAS THE CORRECT OUTCOME BECAUSE THESE

21   WEREN'T STEEL-TOED SHOES AND THEY WERE SHOES THAT CAN BE WORN

22   OUTSIDE OF WORK.  THEY DON'T HAVE A DENNY'S LOGO ON THEM.

23   THEY'RE NOT SOMETHING THAT WAS UNIQUE.

24          *THE COURT:*  WAS THERE A CALIFORNIA, WHICH IS WHAT I

25   THINK HE IS LOOKING FOR, SPECIFIC ABOUT THIS SORT OF SHOE PRIOR

1   TO THAT DECISION THAT WOULD HAVE SAID YES, YOU HAVE TO PAY FOR

2   THOSE.

3          MS. PRITIKIN:  THEY STARTED THE PROCESS OF RULE MAKING

4   TO ASSERT THAT AND NEVER FINISHED THAT PROCESS AND WITHDREW IT.

5          THE COURT:  THAT WAS ALL PRIOR TO 2011?  WHAT WAS THE

6   STATUS --

7          MS. PRITIKIN:  THERE WASN'T ANY.

8          THE COURT:  -- YOU SAID THERE WAS JUST EYEWEAR.

9          MS. PRITIKIN:  RIGHT.  THERE WAS NO RULING THAT I'M

10  AWARE OF THAT HAD TO DO WITH SHOES IN CALIFORNIA.  BUT EVEN IF

11  THERE WERE, IT WOULD BE IRRELEVANT BECAUSE OSHA PREEMPTS.

12         THE COURT:  RETROACTIVELY?

13         MS. PRITIKIN:  NO, OSHA PREEMPTS THE WHOLE TIME, SO IF

14  OSHA SAYS THIS IS WHAT IT MEANS, THEY'RE NOT SAYING THIS MEANS

15  THIS AFTER TODAY, IT'S WHAT IT ALWAYS MEANT.  THEY'RE

16  EXPLAINING WHAT THE STATUTORY AND REGULATORY REQUIREMENTS ARE.

17         THE COURT:  SO TO THE EXTENT THE STATUTE WASN'T

18  SPECIFIC, THEIR RULING IN 2011 SAYING THAT THIS WAS NOT

19  COVERED, IT WAS NOT INTENDED TO BE COVERED, IT'S NEVER BEEN

20  COVERED WAS FROM THE BEGINNING?

21         MS. PRITIKIN:  THAT'S CORRECT.

22         THE COURT:  OKAY.  I UNDERSTAND THAT'S YOUR POSITION.

23         GO AHEAD.

24         MR. SULLIVAN:  MAY I PROVIDE IT?  YOUR HONOR, AGAIN I

25  APOLOGIZE.  THIS IS ACTUALLY THE GUILLERMO LEMUS MOTION.  IT'S

1   PAGE 15 OF GUILLERMO LEMUS' MOTION FOR CLASS CERTIFICATION.

2            *MS. PRITIKIN:*  I'M SORRY WHAT EXHIBIT?

3            *MR. SULLIVAN:*  IT'S WITHIN THE -- PAGE 15.

4            *THE COURT:*  BECAUSE THIS WASN'T HARD ENOUGH TO FIGURE

5   OUT.

6            *MR. SULLIVAN:*  AND HERE'S THE CITE, YOUR HONOR, IT'S

7   CODE OF REGULATIONS TITLE 29 §1910.132.  AND SINCE IT'S IN THE

8   PAPERS, WITH YOUR HONOR'S PERMISSION, I'LL JUST CITE TO THE

9   RELEVANT PORTIONS.  IT DISCUSSING WHAT NEEDS TO BE PAID AND

10  WHAT DOESN'T NEED TO BE PAID BY THE EMPLOYER AND THE EMPLOYEE.

11           AND I'M JUST GOING TO -- WELL, HERE'S FROM -- EXCUSE

12  ME.  THIS IS ALSO THE EMPLOYER PAYMENT FOR PERSONAL PROTECTIVE

13  EQUIPMENT, 72 FED REG FEDERAL 64342 AND 64348.  PUT SIMPLY --

14  AND I'M QUOTING, I'M SORRY.  OPEN QUOTE "PUT SIMPLY, COMMA, THE

15  EXEMPTED FOOTWEAR PROVIDES THE PROTECTION OF THE ORDINARY

16  SAFETY TOE SHOE" -- I'M SORRY, YOUR HONOR THIS IS MY THROAT.

17  "SAFETY TOE SHOE OR BOAT, COMMA, WHILE FOOTWEAR WITH ADDITIONAL

18  SAFETY ATTRIBUTES BEYOND THIS OPEN PARENTHESIS (EG, SHOES AND

19  BOOTS WITH SPECIAL SOLES) CLOSED PARENTHESIS FALL UNDER THE

20  EMPLOYER PAYMENT REQUIREMENT."

21           SO PRIOR TO 2011, IT IS SPECIFICALLY SET FORTH IN A

22  FEDERAL REGULATION THAT SHOES WITH SPECIAL SOLES, WHICH IS WHAT

23  WE'RE DEALING WITH HERE, QUOTE/UNQUOTE "FALL UNDER THE EMPLOYER

24  PAYMENT REQUIREMENT."

25           *THE COURT:*  OKAY.  I FOUND THE PAGE THAT YOU'RE

1    TALKING ABOUT.

2            WAIT A MINUTE.  IT SAYS "THE EMPLOYER IS NOT REQUIRED

3    TO PAY FOR NON-SPECIALTY SAFETY TOE PROTECTIVE FOOTWEAR AND

4    NON-SPECIALTY PRESCRIPTION SAFETY EYEWEAR PROVIDED THAT THE

5    EMPLOYER PERMITS SUCH ITEMS TO BE WORN OFF THE JOB SITE.

6            *MR. SULLIVAN:*  EXACTLY.  AND THAT'S WHAT WE HAVE IN

7    THE DEPOSITION TESTIMONY, WHICH IS CITED TO.  DENNY'S IS NOT

8    TALKING ABOUT SAFETY TOE FOOTWEAR, AND THERE'S A PLETHORA OF

9    CASES ON SAFETY TOE FOOTWEAR.

10           *THE COURT:*  WHERE DOES IT SAY THAT THEY HAVE TO PAY

11   FOR NON-SPECIALTY NON-SAFETY TOE FOOTWEAR?  THAT'S WHAT I'M

12   LOOKING FOR.

13           *MR. SULLIVAN:*  SAME PAGE, YOUR HONOR.  IT STARTS AT

14   LINE 19, AND IT'S BOLDED.  "PUT SIMPLY, THE EXEMPTED FOOTWEAR

15   PROVIDES THE PROTECTION OF AN ORDINARY SAFETY TOE, SHOE OR

16   BOOT, WHILE FOOTWEAR WITH ADDITIONAL SAFETY ATTRIBUTES BEYOND

17   THIS, (EG, SHOES AND BOOTS WITH SPECIAL SOLES) FALL UNDER THE

18   EMPLOYER PAYMENT REQUIREMENT."

19           *MS. PRITIKIN:*  YOUR HONOR, YOU NEED TO LOOK AT THE

20   SENTENCE BEFORE THAT THAT STARTS "ANY SAFETY FOOTWEAR THAT HAS

21   ADDITIONAL PROTECTION OR IS MORE SPECIALIZED..."  AND IT'S

22   BECAUSE OF QUESTIONS THAT GOT RAISED THAT I THINK THE QUESTION

23   THAT WAS ASKED IN THE SHOE DIRECTIVE, THAT'S WHY IT WAS

24   ANSWERED BECAUSE WHAT THEY'RE TALKING ABOUT WITH NONSLIP SOLES,

25   NONSLIP SOLES USED WHEN STRIPPING FLOORS.  THERE'S SPECIAL

1    KINDS OF SHOES THAT ARE IN PARTICULAR KINDS OF INDUSTRIAL

2    ENVIRONMENTS, AND THAT'S WHY NO. 4 ON PAGE 36 OF THE SHOE

3    DIRECTIVE, THE QUESTION IS ASKED ABOUT SLIP RESISTENT SOLES,

4    THAT'S NOT THE SAME AS WHAT THEY'RE TALKING ABOUT IN THIS

5    REGULATION, AND THAT'S WHAT OSHA CLARIFIES IN THE DIRECTIVE.

6            MR. SULLIVAN:  I RESPECTFULLY DISAGREE WITH THOSE

7    FACTS, YOUR HONOR.  BUT NOTWITHSTANDING THAT, IT GOES TO THE

8    FACT THAT PRIOR TO THE 2011 CHANGE, FED OSHA AT THE VERY LEAST

9    WAS NEUTRAL ON IT.  BUT ALSO THERE IS LANGUAGE IN HERE, WHICH

10   IS SUBJECT TO YOUR HONOR'S INTERPRETATION, BUT SAYS, SPECIAL

11   SOLES HAVE TO BE PAID BY THE EMPLOYER.  I DON'T KNOW HOW MUCH

12   MORE DIRECT YOU CAN GET GIVEN THESE PARAMETERS, A MOTION FOR

13   SUMMARY ADJUDICATION.  I THINK THAT REPRESENTATION BY DENNY'S

14   IS EXTRINSIC AT BEST.

15           BUT WHAT WE HAVE HERE IS NOTHING BUT OPINIONS AS TO

16   HOW CALIFORNIA IS GOING TO CHANGE IT.  BUT IF YOU WANT TO TAKE

17   A LOOK AT WHAT'S BEING DISCUSSED, IT IS CONTRARY TO THE FEDERAL

18   REGULATION, AND THAT IS WHY IT'S SO OPEN TO COMMENT.

19           THE COURT:  I'VE GOT TO SAY, I NEED OBVIOUSLY TO LOOK

20   AT THIS IN MORE DETAIL --

21           MR. SULLIVAN:  SURE.

22           THE COURT:  -- BECAUSE IT WOULD APPEAR TO ME TO BE

23   ABSOLUTELY ILLOGICAL TO SAY THAT AN EMPLOYER ISN'T REQUIRED TO

24   PAY FOR PROTECTIVE FOOTWEAR THAT INVOLVES SAFETY TOES AND

25   THINGS THAT ARE VERY SPECIFIC TO A JOB BUT HAS TO PAY FOR A

1    NONSKID, RUBBER SOLE SHOE THAT WOULD BE JUST LIKE A TENNIS

2    SHOE, SO YOU HAVE TO PAY FOR THE THING THAT'S MORE COMMON, MORE

3    ORDINARY, MORE REGULAR AND NOT FOR THE VERY SPECIALIZED

4    HIGH-END SHOES THAT ARE BEING USED ON THE JOB?  I DON'T THINK

5    THAT THAT IS THE WAY THIS IS INTENDED TO BE READ WHEN IT TALKS

6    ABOUT FOOTWEAR WITH ADDITIONAL SAFETY ATTRIBUTES BEYOND THIS.

7    SO IT HAS TO BE SOMETHING, THE STEEL TOE, PLUS SOMETHING MORE,

8    NOT NO STEEL TOE, NO METATARSAL REINFORCEMENT, BUT IT HAS A

9    RUBBER SOLE, SO NOW YOU HAVE TO PAY FOR IT?  THAT SEEMS

10   IMPRACTICAL.

11        *MR. SULLIVAN:*  WELL, WE'D BE HAPPY TO PROVIDE

12   SUPPLEMENTAL BRIEFING, YOUR HONOR.  BUT TWO POINTS, THE SAFETY

13   TOE SHOES, AGAIN, THERE'S A PLETHORA OF CASE LAW OUT THERE, BUT

14   THAT'S EXACTLY WHY THEY SAID THE EMPLOYER DOESN'T HAVE TO PAY

15   FOR IT, BECAUSE IT'S SOMETHING THAT THE ATTRIBUTES TO THE

16   SAFETY TOE REQUIRE THAT NO ONE ELSE COULD EVER USE THIS SHOE,

17   AND IT'S SUCH A PERSONAL DEVICE.

18        WITH RESPECT TO NONSLIP SHOES AND GOING TO ALL THE

19   FACTS HERE, I BELIEVE YOU HAVE TO GO BACK TO BENDIX, WHICH IS,

20   IF IT'S JUST SOMETHING GENERAL WITH LOW-PAID WORKERS, AND

21   THERE'S A REQUIREMENT, AND I'M GOING TO STICK WITH THAT, YOUR

22   HONOR, THERE'S A REQUIREMENT OR AT LEAST A BENEFIT TO DENNY'S

23   THAT YOU PROVIDE THEM EVERY SIX MONTHS, THAT HAS TO BE ADDED

24   INTO THE MIX WHEN CONSIDERING WHETHER THIS SHOULD BE CONSIDERED

25   OR NOT.  IF DENNY'S IS GOING TO GET $10,000 EVERY TIME SOMEBODY

1   SLIPS AND FALLS, AND IT'S UNDISPUTED THAT THEY HAVE BENEFITED

2   FROM THAT, THERE HAVE BEEN SLIP AND FALLS THAT HAVE BEEN

3   COVERED BY THIS POLICY, WHY IS ANYBODY CONSIDERING FORCING A

4   MINIMUM WAGE WORKER OR IN THIS SENSE WHAT WE'RE DEALING WITH,

5   NOT MINIMUM WAGE, BUT A LOWER PAID WORKER TO BUY SHOES EVERY

6   SIX MONTHS?  WHY DOESN'T DENNY'S JUST INCORPORATE IT?

7         *THE COURT:*  YOU'RE STILL MIXING APPLES AND ORANGES

8   RIGHT NOW.  NONE OF THAT TO ME HAS TO DO WITH WHETHER THERE'S A

9   LAW THAT REQUIRES THAT DENNY'S HAS TO PAY FOR THIS.  THE

10  SECTION THAT YOU'VE CITED IN THIS FEDERAL REGULATION IN ITS

11  ENTIRETY TALKS ABOUT AN EXEMPTION THAT APPLIES ONLY TO

12  NON-SPECIALTY SAFETY TOE SHOES AND BOOTS AND NOT OTHER TYPES OF

13  SPECIALTY PROTECTIVE FOOTWEAR.  ANY SAFETY FOOTWEAR THAT HAS

14  ADDITIONAL PROTECTION OR IS MORE SPECIALIZED.  THAT, TO ME,

15  IMPLIES YOU'VE GOT A SAFETY TOE BOOT THAT'S GOT SOMETHING MORE,

16  NOT SOMETHING LESS.

17        *MR. SULLIVAN:*  OH, NO.  NO, SAFETY TOES, THE EMPLOYER

18  NEVER HAS TO PAY FOR SAFETY TOES, YOUR HONOR.

19        *THE COURT:*  RIGHT.  BUT IF YOUR SAFETY TOE SHOE ALSO

20  HAS OTHER ATTRIBUTES, THEN YOU MAY HAVE TO PAY FOR IT, BUT

21  YOU'RE NOT GOING BACK ALL THE WAY DOWN THE LINE TO A RUBBER

22  TENNIS SHOE AND SAY, THAT, YOU HAVE TO PAY FOR.  IT JUST SEEMS

23  ILLOGICAL.  I'LL LOOK AT IT MORE SPECIFICALLY.  BUT THIS IS

24  WHAT YOU'RE RELYING ON?

25        *MR. SULLIVAN:*  NO, YOUR HONOR.  WHAT WE'RE RELYING ON

1  IS LABOR CODE SECTION 6401, ET SEQ, WHICH SAYS SPECIFICALLY

2  THAT ANYTHING THAT'S SAFETY, AND IT'S UNDISPUTED HERE THAT

3  THESE NON-SLIPS ARE SAFETY SHOES.  THEY'RE MEANT FOR THE SAFETY

4  OF THE EMPLOYEES AND THE SAFETY OF THE COMPANY FROM AN ECONOMIC

5  SENSE.  6401 IS SPECIFIC.  THIS IS JUST IN RESPONSE.

6          NOW ONE THING I VOLUNTEER, IF YOUR HONOR WANTS

7  SUPPLEMENTAL BRIEFING FROM US ON THIS, I'M HAPPY TO PROVIDE IT.

8  BUT I UNDERSTAND HOW YOUR HONOR IS CONSTRUING THIS.  I WOULD

9  RESPECTFULLY STATE THAT THE CASE LAW IS CONTRARY FOR CERTAIN

10  SPECIFIED REASONS, AND IF YOU WANT SUPPLEMENTAL BRIEFING, WE'LL

11  PROVIDE IT.

12          *THE COURT:*  WELL, GOD KNOWS THIS THING HAS BEEN

13  BRIEFED.  IF I DO NEED SOMETHING, WE'LL LET YOU KNOW.  WE HAVE

14  A LOT.  I WANT TO MOVE ON FROM THIS ISSUE.

15          AND THE NEXT ISSUE BEING THE ONE YOU'RE JUST DYING TO

16  TALK ABOUT, THE ACTUAL FACTS OF HOW THE SHOES ARE PURCHASED AT

17  DENNY'S.

18          YOU HAVE A CROSS-MOTION FOR SUMMARY JUDGMENT ON A

19  WRITTEN AUTHORIZATION ISSUE.  AT THE VERY LEAST, ALTHOUGH THE

20  DEFENDANTS HAVE PROVIDED EVIDENCE THAT WOULD AT LEAST RAISE AN

21  ISSUE, I THINK, FOR A JURY THAT THERE'S WRITTEN AUTHORIZATION

22  IN THAT THE POLICY FOR THIS -- LET ME FIND IT.  IT WAS EXHIBIT

23  D TO -- YES, EXHIBIT D TO JANICE BRADY'S DECLARATION IN SUPPORT

24  OF THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.  IT'S DOCKETED

25  NO. 18-4 NOW.

1          AND IN THAT EXHIBIT, IT'S THE POLICY AND PROCEDURE

2    REGARDING THE SAFETY SHOES.  IT TALKS ABOUT THE POLICY THAT ALL

3    EMPLOYEES WEAR AN APPROPRIATE SLIP-RESISTENT SHOE, AND SAYS IN

4    AN EFFORT TO PROVIDE ALL EMPLOYEES WITH EASY ACCESS TO QUALITY

5    SLIP-RESISTENT SHOES, THEY ARE OFFERING A PAYROLL DEDUCTED

6    SAFETY SHOE PROGRAM AND THAT IT IS VOLUNTARY, AND IF YOU DO IT,

7    YOU'LL HAVE THE PRICE OF THE DISCOUNTED SHOE PAID BY TWO

8    PAYROLL DEDUCTIONS.  AND IT TALKS ABOUT A FORM YOU HAVE TO FILL

9    OUT TO AUTHORIZE THE PAYROLL DEDUCTION.  THEY'VE REFERENCED THE

10   PAGES OF THE WEBSITE IF YOU ORDER ONLINE.  AND IF YOU WALK

11   THROUGH THOSE PAGES, AND THEY ARE --

12          MS. PRITIKIN:  E.

13          THE COURT:  I'M SORRY, WHICH EXHIBIT IS IT?

14          MS. PRITIKIN:  I BELIEVE IT'S EXHIBIT E AND F.

15          THE COURT:  I WAS JUST LOOKING AT IT, AND NOW I LOST

16   IT.

17          MS. PRITIKIN:  IT'S THE LAST PAGE OF EXHIBIT F.

18          THE COURT:  HERE IT IS.  I'VE GOT IT.  THIS WOULD BE

19   DOCUMENT -- AT LEAST THE DOCUMENT I WAS USING WAS DOCUMENT

20   24-4, EXHIBIT F, WHICH WALKS YOU THROUGH THE PAGES OF THE SHOES

21   FOR CREWS WEBSITE.  THERE ARE AT LEAST TWO PLACE IN THE PROCESS

22   OF PLACING AN ORDER ON THAT WEB PAGE WHERE YOU HAVE TO INDICATE

23   THAT YOU'RE CHOOSING A BILLING METHOD OF EITHER CREDIT CARD OR

24   BILL TO THE COMPANY FOR PAYROLL DEDUCTION AND THEN AGAIN, WHEN

25   YOU CONFIRM YOUR ORDER, IT SAYS SPECIFICALLY ON THERE, THE

1    METHOD OF PAYMENT IS A PAYROLL DEDUCTION, AND IT SHOWS WHAT'S

2    BEEN ORDERED, WHO IS ORDERING IT, AND WHERE IT'S BEING SHIPPED

3    TO.

4            WHY DOESN'T FILLING THOSE FORMS OUT CONSTITUTE A

5    WRITTEN AUTHORIZATION TO MAKE A DEDUCTION FROM YOUR PAYROLL?

6            *MR. SULLIVAN:*  IT DOESN'T COMPORT WITH THE PLAIN

7    LANGUAGE OF THE STATUTE, YOUR HONOR.  FIRST OF ALL, THE MOTION

8    FOR SUMMARY ADJUDICATION, AS TO 221 JUST SAYS YOU CAN'T DO IT,

9    PERIOD.  I BELIEVE WHAT YOUR HONOR IS REFERRING TO IS A

10   POSSIBLE EXEMPTION UNDER LABOR CODE SECTION 224.  BUT WHEN YOU

11   READ LABOR CODE SECTION 224, WRITTEN AGREEMENTS ONLY GO AS TO

12   INSURANCE PREMIUMS AND WAGES SET FORTH UNDER COLLECTIVE

13   BARGAINING.  SO STEP 1, THIS ISN'T -- UNLESS YOUR HONOR HOLDS

14   IT DOES, THIS ISN'T ANYTHING TO DO WITH COLLECTIVE BARGAINING.

15   THERE ARE NO UNIONS HERE.

16           *THE COURT:*  SO YOU CAN NEVER MAKE A PAYROLL DEDUCTION

17   FOR ANYTHING UNDER THAT LIST THAT YOU CITED UNDER 224?

18           *MR. SULLIVAN:*  WITHOUT AN EXPRESS WRITTEN AGREEMENT,

19   NO, YOU CAN'T.

20           *THE COURT:*  WHY IS THIS NOT AN EXPRESS WRITTEN

21   AGREEMENT?

22           *MR. SULLIVAN:*  IF I MAY, JUST TO CLARIFY THE RECORD,

23   WITHOUT AN EXPRESS WRITTEN AGREEMENT, YOU CAN NEVER DO SO.

24   WITH AN EXPRESS WRITTEN AGREEMENT, YOU CAN ONLY DO SO IN VERY

25   LIMITED CIRCUMSTANCES.  AND THE REASON FOR IT BEING IS GOING

1    BACK TO UPTON SINCLAIR AND THE JUNGLE AND ALL OF THE CASE LAW

2    THAT HAS FOLLOWED THAT.  IF YOU START REQUIRING YOUR EMPLOYEES

3    TO PURCHASE FROM YOU, YOU'RE GOING TO BREAK DOWN SOCIETY.

4            *THE COURT:*  THIS ISN'T REQUIRING YOU PURCHASE ANYTHING

5    FROM ME.  YOU'RE GOING IN TO A WEBSITE VOLUNTARILY ORDERING

6    SHOES YOU NEED FOR YOUR JOB, AND YOU HAVE THE OPTION TO DO IT

7    AS A PAYROLL DEDUCTION, AND YOU HAVE TO PRESS EVERY ONE OF

8    THOSE BUTTONS AND MAKE EVERY ONE OF THOSE CHOICES AND HIT YES

9    AT THE END.  ISN'T THIS KIND OF FORM OVER FUNCTION TO SAY, THIS

10   IS NOT SOME HANDWRITTEN NOTE I GAVE YOU BECAUSE I DID IT ON THE

11   COMPUTER?

12           *MR. SULLIVAN:*  NO, YOUR HONOR, BECAUSE WE'RE PRESUMING

13   WITH YOUR ANALOGY IT'S ACTUALLY THE EMPLOYEE, AND THAT IS A

14   LOGICAL LEAP THAT IS PRECLUDED BY THE PLAIN LANGUAGE OF 221.

15           *THE COURT:*  IS THERE ANY EVIDENCE THIS WAS EVER DONE

16   FOR ONE OF THE EXEMPT EMPLOYEES?  BECAUSE THIS IS THE ONLY

17   PLACE YOU HAVE THIS CLAIM.  OH, NO, YOU HAVE IT IN THE OTHER

18   ONE TOO.

19           *MR. SULLIVAN:*  SURE.

20           *THE COURT:*  BUT FOR ANYONE WHO SAID, I GOT A SHOE

21   DEDUCTION ON MY WAGES, AND I NEVER ORDERED SHOES?

22           *MR. SULLIVAN:*  NO.  WHAT WE'RE DEALING WITH, YOUR

23   HONOR, IS THE ABSENCE OF ANY EVIDENCE OF AN EXPRESS WRITTEN

24   AGREEMENT.  WE'RE LOOKING AT THE PLAIN LANGUAGE OF LABOR CODE

25   SECTION 201 WHICH PRECLUDES IT FOR A NUMBER OF PUBLIC POLICY

1    REASONS.  BUT IF YOU'RE GOING TO STEP AROUND THAT AND SAY WELL,

2    YOU NEED TO ESTABLISH THAT SOMEBODY DID IT, WE WOULD

3    RESPECTFULLY SUBMIT THAT YOU'RE ABROGATING THE PLAIN LANGUAGE

4    OF THE LABOR CODE ITSELF.  THIS IS EASILY REMEDIED.  IF YOU

5    JUST DON'T TO IT THROUGH A PAYROLL DEDUCTION BECAUSE AGAIN, AND

6    I'M SORRY, I LIKE TO GET UP ON MY APPLE BOX HERE, BUT I DEAL

7    WITH LOW-WAGE EMPLOYEES THAT COME TO SEE ME AND SAY, WHY AM I

8    FORCED TO DO THIS?  WHY CAN'T I BUY MY KID SHOES AS OPPOSED TO

9    PURCHASE SHOES EVERY SIX MONTHS.

10          *THE COURT:*  YOU'RE BACK TO EVERY SIX MONTHS.  I'M

11   TALKING ABOUT ONCE YOU START THE JOB, THE FIRST DAY, YOU NEED

12   TO GET THESE SHOES AND THEY TELL YOU, YOU CAN GET THEM THROUGH

13   THIS SYSTEM, AND WE'LL DEDUCT IT FROM YOUR PAY.  YOU DON'T HAVE

14   A CREDIT CARD, YOU DON'T HAVE TO GO OUT OF POCKET, WHATEVER

15   YOUR PERSONAL CHOICES ARE, AND YOU SAY, THIS LOOKS CONVENIENT

16   TO ME.  I GO IN, I FILL IN THE INFORMATION OUT, I PICK MY SHOE,

17   PROVIDE MY SHOE SIZE, AND SAY, YES, TAKE THIS OUT OF MY PAY.

18   WHY NOT?

19          *MS. PRITIKIN:*  BECAUSE YOU'RE PRESUMING A WHOLE BUNCH

20   OF STUFF THERE, YOUR HONOR.  YOU'RE PRESUMING THAT I WANT TO DO

21   IT, THAT THEY DON'T HAVE A CREDIT CARD.

22          *THE COURT:*  IF THEY HAVE A CREDIT CARD, THEY CAN

23   CHOOSE TO USE THEIR CREDIT CARD.  IT DOESN'T PRECLUDE YOU FROM

24   PAYING DIRECTLY.

25          *MR. SULLIVAN:*  THE ONLY THING PRECLUDED HERE IS TAKING

1  A DEDUCTION FROM YOUR PAYCHECK.

2       *THE COURT:*  EVEN IF YOU CHOOSE TO DO SO?

3       *MR. SULLIVAN:*  THERE IS NO EVIDENCE OF IT, AND, YES,

4  YOUR HONOR, EVEN IF YOU CHOOSE TO DO SO.  BECAUSE THE PUBLIC

5  POLICY INHERENT BEHIND 221 IS THAT WHETHER YOU CHOOSE TO DO SO

6  OR NOT, YOU'RE GOING TO BE DEALING WITH, HERE, A MULTIMILLION

7  DOLLAR COMPANY THAT HAS A WHOLE BUNCH OF EXCELLENT ATTORNEYS

8  AND A SINGLE INDIVIDUAL THAT IS SAYING AFTER THE FACT, I NEVER

9  MEANT TO DO THIS.  THE LABOR CODE IS VERY PROTECTIVE TOWARD

10  EMPLOYEES.  THE PLAIN LANGUAGE IS, YOU JUST CAN'T DO IT.  IF

11  YOU WANT TO GET AROUND THE ISSUE, FIGURE OUT A WAY TO DO IT.

12  DRIVE THEM DOWN TO LOHMANS.

13       *THE COURT:*  OH, THAT'S NOT MORE COERCIVE, TO SAY LET

14  ME DRIVE YOU SOMEPLACE AND MAKE YOU BUY SHOES?

15       *MR. SULLIVAN:*  NO, YOUR HONOR, BUT THAT'S THE MAIN

16  REASON THAT THE MOTION WAS BROUGHT.  THAT'S THE MAIN REASON

17  WE'RE LOOKING FOR CERTIFICATION.  THAT IS, IT DOES GET INTO

18  SUBLIME AND AT TIMES THE RIDICULOUS, SO JUST COMPLY WITH THE

19  PLAIN LANGUAGE OF THE STATUTE.

20       *THE COURT:*  FOR PURPOSES OF WE'RE GOING TO TAKE A

21  LITTLE STEP FORWARD INTO CERTIFICATION, THIS TO ME IS VERY

22  PROBLEMATIC AS TO HOW YOU WOULD SHOW THE COMMONALITY HERE

23  BECAUSE YOU'VE GOT A SYSTEM THAT ON ITS FACE GIVES YOU A

24  CHOICE.  YOU HAVE A CHOICE WHETHER TO DO THIS BASED ON THE

25  WRITTEN FACE OF THE POLICY, YOU HAVE A CHOICE WHEN YOU GO IN

1    AND USE THEIR PREFERRED VENDOR TO PAY FOR IT DIRECTLY OR USE A

2    PAYROLL DEDUCTION.  AND SO THAT WOULD NOT REQUIRE FINDING OUT

3    FROM EVERY INDIVIDUAL, DID YOU MAKE THAT CHOICE OR WERE YOU

4    SOMEHOW FELT REQUIRED BECAUSE YOU'RE -- YOU WANT TO IMPLY THAT

5    EVERYBODY FELT REQUIRED TO DO THIS AND THEY WANT TO SAY, NO,

6    PEOPLE MADE CHOICES.

7            *MR. SULLIVAN:*  RESPECTFULLY, NO, YOUR HONOR, ALTHOUGH

8    WE MAY BE SWITCHING INTO COERCION.  JUST TO SPECIFY, WHAT WE'RE

9    SAYING IN TERMS OF THE COERCION IS WE'RE GOING OFF THEIR TIME

10   RECORDS.  SO IF IT'S WHERE YOU'RE DOING IT EVERY SIX MONTHS,

11   YOU'RE GOING TO GET THAT FROM THE TIME RECORDS.

12           BUT IN DIRECT RESPONSE I BELIEVE TO THE FIRST

13   QUESTION, WE'RE NOT ASKING FOR ANYTHING OTHER THAN COMPLIANCE

14   WITH THE PLAIN LANGUAGE.  AND WHAT IT COMES DOWN TO HERE, YOUR

15   HONOR, IS A STATEMENT MADE BY SOMEBODY WHERE 10,000 PEOPLE WALK

16   INTO THIS COURTROOM CANNOT EVER TRUMP THE REQUIREMENT FOR AN

17   EXPRESS WRITTEN AGREEMENT.  AND WE'VE PROVIDED THOSE DICTIONARY

18   LANGUAGES TO YOUR HONOR IN OUR PAPERS.  A SUBSEQUENT ORAL

19   REPRESENTATION CAN NEVER BE AN EXPRESS WRITTEN AGREEMENT.

20           *THE COURT:*  IT'S NOT ORAL.

21           *MR. SULLIVAN:*  EXCUSE ME?

22           *THE COURT:*  THIS ISN'T ORAL.  THIS IS AS WRITTEN AS

23   YOU GET IN THE 21ST CENTURY.

24           *MR. SULLIVAN:*  YOUR HONOR, RESPECTFULLY AGAIN,

25   SOMETIMES MY -- YOU KNOW, I GET IMPASSIONED BY THIS, SO I DON'T

1   WANT TO SEEM DISRESPECTFUL.  BUT WE PROVIDED THE DICTIONARY

2   DEFINITIONS.  IT CANNOT BE EXPRESS AND IT CANNOT BE WRITTEN AND

3   IT CANNOT BE AN AGREEMENT.  AN AGREEMENT UNDER CALIFORNIA LAW

4   REQUIRES A SIGNATURE.  HOW WE'RE GOING TO ESTABLISH THROUGH

5   CLASS CERTIFICATION, IF YOUR HONOR SO ALLOWS, LIABILITY IS THE

6   ABSOLUTE ABSENCE OF ANY WRITTEN AGREEMENT.  IT IS EASY TO

7   DEFEAT ANY CLASS CERTIFICATION ISSUE EVER, EVER, IF YOU JUST

8   WANT TO SAY, WELL, THAT'S NOT WHAT THE STATUTE SAYS, BUT YOU

9   CAN BRING IN EXTRINSIC EVIDENCE.

10         WHAT WE WOULD SAY IS, IN ESTABLISHING CLASS

11  CERTIFICATION, WE HAVE ESTABLISHED RIGHT NOW THAT DENNY'S HAS

12  NEVER PROVIDED THAT EXPRESS WRITTEN AUTHORIZATION.  WE HAVE

13  ESTABLISHED THAT YOU CANNOT IN ANY CIRCUMSTANCES DEDUCT FROM A

14  PAYCHECK UNDER LABEL CODE SECTION 221.  IF DENNY'S WANTS TO

15  ASSERT THE DEFENSE OF 224, THAT'S THEIR BURDEN OF PROOF, SO THE

16  BURDEN SWITCHES TO THEM.  SO IF THEY WANT TO SAY, WE'RE GOING

17  TO BRING IN A WHOLE BUNCH OF PEOPLE AND YOUR HONOR ALLOWS THEM,

18  I WILL HAVE TO DECIDE WHAT THE NEXT STEP IS.  AND I WOULD

19  DISAGREE WITH YOUR HONOR, BUT I DO SO RESPECTFULLY.

20         *THE COURT:*  YOU DO AGREE, THOUGH, THOSE SECTIONS HAVE

21  TO BE READ TOGETHER, 221 AND 224?

22         *MR. SULLIVAN:*  UNDER CERTAIN CIRCUMSTANCES.  BUT WHAT

23  I WOULD SAY TO YOUR HONOR IS YOU START WITH 221, AND IT'S

24  UNDISPUTED THE DEDUCTIONS WERE TAKEN OUT, SO STEP 1, THEY'RE

25  ILLEGAL.  IF DENNY'S WANTS TO ESTABLISH THAT THEY'VE GOT AN

1    EXCEPTION TO THAT UNDER 224, THAT'S THEIR BURDEN.  AND THEY'VE

2    PROVIDED NO EVIDENCE TO YOUR HONOR IN THEIR OPPOSITION FOR

3    CLASS CERTIFICATION THAT THEY INTEND TO PROVIDE --

4         THE COURT:  THEY'VE PROVIDED EVIDENCE IN THEIR SUMMARY

5    JUDGMENT MOTION SAYING THAT THIS FALLS WITHIN THE SCOPE OF 224,

6    THAT IT IS A DEDUCTION THAT CAN BE TAKEN AND THAT IT WAS

7    AUTHORIZED BY THE EMPLOYEE.

8         MR. SULLIVAN:  THEY HAVE TO GO THROUGH TWO THINGS.

9    JUST SETTING OUR RECORD.  IT HAS TO BE AN INSURANCE PREMIUM OR

10   WAGES UNDER COLLECTIVE BARGAINING AGREEMENT, AND NONE OF THOSE

11   FIT.  AND THEN THE DEATH NAIL FOR SUCH AN OFFENSE WOULD BE, YOU

12   NEED AN EXPRESS WRITTEN AGREEMENT.  AND THAT'S SET FORTH IN OUR

13   PAPERS.  IT CANNOT BE EXPRESS, IT CANNOT BE WRITTEN, AND IT

14   CANNOT BE AN AGREEMENT.

15        THE COURT:  ALL RIGHT.  GO AHEAD.

16        MS. PRITIKIN:  THANK, YOUR HONOR.  ROLANDO LEMUS

17   TESTIFIED IN HIS DEPOSITION ON PAGE 23, WHICH IS DOCUMENT 24-2

18   IN THIS CASE, AT LINE 11 AND 12, HE WAS ASKED, WHERE DID YOU

19   GET THE SHOES?

20        "ANSWER:  I WOULD ORDER THEM THROUGH THE COMPUTER."

21        AND WE'VE SHOWN THAT TO ORDER THEM THROUGH THE

22   COMPUTER, YOU HAVE TO PROVIDE AN ELECTRONIC SIGNATURE AND YOU

23   HAVE TO AUTHORIZE.  AND THAT IS A WRITTEN AUTHORIZATION.  IT

24   DOESN'T REQUIRE A HANDWRITTEN SIGNATURE.

25        IN ADDITION, IN HIS DEPOSITION, MR. LEMUS AT PAGE 32

WAS ASKED, HOW HE ORDERED SHOES FOR EMPLOYEES.  AND HE

TESTIFIED, AND THIS IS AT PAGE 32 OF HIS DEPOSITION STARTING AT

LINE 22, "AND THE EMPLOYEE WOULD GIVE THAT TO YOU SAYING,

PLEASE, ORDER THE SHOES FOR ME?

AND HE ANSWERED:  "YES, THEY WOULD ASK ME TO ORDER

THEM."

THEN HE WAS ASKED, "HOW DID THAT HAPPEN?"

AND HE SAID THAT THEY WOULD GIVE HIM A PAPER, AND ON

THE PAPER, THEY WOULD HAVE THEIR NAME, THEY WOULD HAVE THEIR

SOCIAL SECURITY NUMBER, AND THEY WOULD HAVE THEIR SHOE SIZE AND

THE INFORMATION OF THE SHOE THEY WANTED TO ORDER SO THAT IT

COULD BE DEDUCTED FROM THEIR PAYCHECK.

I MEAN, THAT'S THE EVIDENCE IN THIS CASE.  THERE IS NO

EVIDENCE TO SHOW THAT ANY SHOES WERE ORDERED THAT WEREN'T

AUTHORIZED.  AND WE HAVE PROVIDED DECLARATIONS FOR A NUMBER OF

PEOPLE WHO TESTIFIED THAT THEY MADE A CHOICE ABOUT WHETHER TO

ORDER FROM SHOES FOR CREWS OR NOT AND THAT THEY AUTHORIZED THE

PAYROLL DEDUCTION TO THE EXTENT THERE WAS ONE.

SO FOR MR. LEMUS, WE'RE ENTITLED TO SUMMARY

ADJUDICATION, IF NOT SUMMARY JUDGMENT, ON HIS CLAIM THAT THERE

WAS NO AUTHORIZATION FOR HIS DEDUCTION BECAUSE HE ADMITS THAT

HE ORDERED THEM THROUGH THE COMPUTER, AND TO ORDER THEM THROUGH

THE COMPUTER, HE NECESSARILY HAD TO AUTHORIZE THE PAYROLL

DEDUCTION.

MR. SULLIVAN:  YOUR HONOR, IF I MAY?

1          THE COURT:  YES.

2          MR. SULLIVAN:  WHAT COUNSEL IS TALKING ABOUT HAS BEEN

3     REJECTED BY CALIFORNIA.  AND I'M REFERRING TO A JULY 31ST 1998

4     OPINION, WHICH HAS BEEN SUBSEQUENTLY AFFIRMED BY SEVERAL CASES

5     WHICH ARE SET FORTH IN OUR PAPERS.  BUT WHERE YOU HAVE

6     ELECTRONIC SIGNATURES, YOU NEED UNIQUE IDENTIFIERS.  NOW

7     MR. ROLANDO LEMUS TESTIFIED THAT HE DID IT, HE NEVER SAID HE

8     AUTHORIZED IT.  AND I DON'T THINK THAT HE COULD IN A DEPOSITION

9     BECAUSE IT WOULD REQUIRE LEGAL KNOWLEDGE.

10          BUT AGAIN, IT GOES TO THE PLAIN LANGUAGE OF 224.  IN

11     ORDER FOR YOU TO FIND SUMMARY ADJUDICATION, YOU HAVE TO GO

12     THROUGH TWO HURDLES, WHICH WE WOULD RESPECTFULLY SUBMIT YOU

13     CANNOT, BECAUSE OF THE UNDISPUTED FACTS, AND YOU SHOULD FIND

14     FOR US.  UNDER 221, YOU CAN MAKE NO DEDUCTIONS EVER FOR

15     WHATEVER GOOD REASON OR BAD REASON.  IF YOU WANT TO GIVE ME,

16     AND I KNOW YOU DON'T.  IF YOU WANT TO GIVE ME 10 SECONDS, I'LL

17     GET ON MY APPLE CRATE AGAIN AND SAY THIS IS A HUGE, RICH

18     CORPORATION, AND THESE ARE MINIMUM WAGE WORKERS.

19          BUT JUST TURNING TO THE PLAIN LANGUAGE OF 221, YOU

20     CANNOT DO IT.  IF UNDER 224, YOU WANT TO ARGUE THAT YOU CAN YOU

21     HAVE TO CROSS THROUGH TWO HURDLES, THE PLAIN LANGUAGE

22     REQUIREMENTS OF 224 WHICH STATE, YOU CAN ONLY GET A WRITTEN

23     AUTHORIZATION FOR, AND I'M PARAPHRASING, I DON'T HAVE

24     EVERYTHING, INSURANCE PREMIUMS AND WAGES BROUGHT UNDER

25     COLLECTIVE BARGAINING.  DENNY'S CANNOT ARGUE THAT EITHER ONE OF

1   THESE FIT THOSE DEFINITIONS.  YOU JUST CAN'T DO IT.

2           AND THEN YOU HAVE TO GET INTO THE EXPRESS WRITTEN

3   AUTHORIZATION.  MS. PRITIKIN IS ARGUING WELL, BUT SHE'S ARGUING

4   THAT YOU SHOULD IGNORE THE PLAIN LANGUAGE OF 224 AND FIND THAT

5   HITTING A BUTTON WITHOUT BEING TOLD WHETHER THIS IS LEGAL OR

6   NOT IS AN EXPRESS WRITTEN AUTHORIZATION.  IT CANNOT BE, AND IT

7   ISN'T.  AND I BELIEVE THAT'S IT FOR NOW, YOUR HONOR.

8           *THE COURT:*  OKAY.

9           *MS. PRITIKIN:*  YOUR HONOR, WITH RESPECT TO THE UNIQUE

10  IDENTIFIER ISSUE, YOU HAVE TO PUT IN A SOCIAL SECURITY NUMBER.

11  THAT'S ABOUT AS UNIQUE AN IDENTIFIER AS CAN BE REQUIRED.  SO TO

12  THE SUGGESTION THAT THERE IS SOMETHING TECHNICALLY IMPROPER

13  ABOUT THE ELECTRONIC SIGNATURE IS NOT ACCURATE.

14          *THE COURT:*  IS THAT AT THE PAGE WHERE YOU LOG IN?

15          *MS. PRITIKIN:*  WELL, I WILL TRY TO FIND EXACTLY WHERE

16  IT IS.  WE MAY NOT HAVE THE SCREEN SHOT THAT SHOWS THAT, BUT

17  THAT'S THE REASON THAT MR. LEMUS TESTIFIED THAT HE HAD TO GET

18  THE SOCIAL SECURITY NUMBERS OF HIS EMPLOYEES WHO WANTED TO

19  ORDER SHOES.

20          *MR. SULLIVAN:*  AND THAT NEGATES MS. PRITIKIN'S

21  ARGUMENT, YOUR HONOR.  NOT ONLY DOES MR. ROLANDO LEMUS HAVE HIS

22  SOCIAL SECURITY NUMBER, BUT SO DOES DENNY'S, AND I HAVE MY

23  EMPLOYEES.  THAT'S NOT A UNIQUE IDENTIFIER.

24          *THE COURT:*  OH, WELL, YES, SORT OF, IT IS.  I MEAN, I

25  HAVE ALL KINDS OF WHAT WOULD BE CONSIDERED LOG-IN PASSWORDS

1    THAT OUR IT DEPARTMENT HAS SO THAT IN CASE I LOSE MY LOG-IN

2    PASSWORD, THEY CAN GET ME BACK IN THE SYSTEM.  I DON'T THINK IT

3    MAKES IT NO LONGER UNIQUE TO ME BECAUSE SOMEONE ELSE HAS IT.

4    AND CERTAINLY SOMEONE WHO HAS YOUR SOCIAL SECURITY NUMBER AS AN

5    EMPLOYER HAS IT WITH CERTAIN FIDUCIARY RESPONSIBILITIES THAT

6    THEY'RE NOT USING IT OTHERWISE.  SO I THINK IT STILL QUALIFIES

7    AS A UNIQUE IDENTIFIER.

8           *MR. SULLIVAN:*  BUT THAT'S THE REASON FOR 221 AND 224,

9    YOUR HONOR.  THEY'RE SAYING WHERE THIS IS OPEN.  NOTHING IS

10   CONCRETE.  YOU PUT YOUR MONEY IN A BANK AND IT CAN GET ROBBED.

11   THAT'S THE REASON WHY WE NEED TO COMPLY WITH THE PLAIN LANGUAGE

12   OF 221 AND 224.  IT OPENS IT UP TO TOO MUCH INTERPRETATION,

13   THIS COULD HAVE HAPPENED.

14          *THE COURT:*  LET'S GO TO THE OTHER CASE.  I KNOW THERE

15   ARE STILL OTHER ISSUES, BUT I WANT TO TALK ABOUT SOME ISSUES

16   AND ASK YOU TO POINT ME OR ANSWER SOME QUESTIONS I HAVE ABOUT

17   THE CLASS CERTIFICATION IN THE NONEXEMPT EMPLOYEE CASE.  GIVE

18   ME TWO SECONDS TO FIND MY NOTES.

19          NOW I KNOW THERE ARE MERITS DISAGREEMENTS HERE, BUT

20   THIS ISN'T A MOTION FOR SUMMARY JUDGMENT.  THIS IS JUST A

21   MOTION WHETHER OR NOT YOU CAN CERTIFY A CLASS IN THIS CASE.

22   AND CERTAINLY WITH REGARD TO THE COMPENSATION ISSUES THAT ARE

23   RAISED, IT WOULD APPEAR TO THE COURT THAT WITH REGARD TO THE

24   ROUNDING ISSUE, WHILE THE POLICY MAY NOT BE ILLEGAL TO ROUND

25   WHETHER OR NOT IT'S BEING DONE IN A NEUTRAL WAY SO THAT IT

1    DOESN'T BENEFIT DENNY'S OR THE EMPLOYEES BUT IT ROUNDS UP, IT

2    ROUNDS DOWN SO THAT IT AVERAGES OUT IT IS A COMMON QUESTION

3    THAT WOULD BE APPLICABLE TO ALL OF THE NONEXEMPT EMPLOYEES.

4            AND WHILE THE MATH PER PERSON MIGHT REQUIRE INDIVIDUAL

5    ANALYSIS, I THINK THE COMMON QUESTION OF WHAT THE ACTUAL

6    PRACTICE IS WITH REGARD TO THE ROUNDING AND HOW ROUNDING IS

7    DONE IS A QUESTION THAT CAN BE ADDRESSED AS A CLASS ACTION.

8            SO TELL ME WHY NOT.

9            *MS. PRITIKIN:*  WELL, LET ME ADDRESS ONE THING FIRST,

10   WHICH IS IN REPLY, PLAINTIFF'S ADMITTED A DECLARATION FROM A

11   PURPORTED EXPERT FOR THE FIRST TIME THAT WE HAVE NEVER HAD THE

12   OPPORTUNITY TO RESPOND TO.  AND I WOULD RESPECTFULLY REQUEST

13   THAT WE HAVE LEAVE OF COURT TO ATTACK THAT DECLARATION BECAUSE

14   WE'VE DETERMINED THAT WHAT THE PERSON DID WAS TO TAKE THE -- SO

15   THERE WOULD BE ROUNDING THAT WAS DONE AND THEN THERE WAS WHAT

16   THE NUMBER WAS THAT THE PERSON WAS BEING PAID ON.  THIS EXPERT

17   TOOK THAT NUMBER AND CLAIMED THAT THAT NUMBER AFTER ROUNDING

18   HAD ALREADY HAPPENED SHOULD BE ROUNDED AGAIN.  AND SO IT'S A

19   COMPLETELY FALSE PREMISE IN THE WAY THAT THAT'S BEEN PRESENTED

20   IN TERMS OF WHO ULTIMATELY IS HELPED OR HURT AS THE RESULT OF

21   THE ROUNDING.

22           SO I JUST WANT TO ASK THAT IF THE COURT IS GOING TO

23   LOOK AT THIS ISSUE TO GIVE US LEAVE TO HAVE OUR EXPERT RESPOND

24   TO HOW THIS CALCULATION IS DONE, BECAUSE IT'S COMPLETELY WRONG

25   AND IT REALLY IS SAYING THAT THERE HAS TO BE DOUBLE ROUNDING

1    WHEN PLAINTIFF'S ARGUMENT IS WE SHOULDN'T BE ROUNDING AT ALL.

2    SO THERE IS A STATEMENT THAT THE APPEARANCE OF CERTAIN NUMBERS

3    MEANS THAT ROUNDING WAS DONE IMPROPERLY IGNORES THE ROUNDING

4    THAT HAD ALREADY TAKEN PLACE.  SO THAT'S MY UNDERSTANDING OF

5    THAT.

6            THE COURT:  OKAY.

7            MS. PRITIKIN:  SO I DON'T THINK THERE IS REALLY AN

8    ISSUE OF DISPUTE THAT THE ROUNDING IS FOR THE BENEFIT OF THE

9    EMPLOYEES ULTIMATELY.  THAT'S MY POINT.  AND I THINK YOUR HONOR

10   SHOULD LET US ESTABLISH THAT IF YOU'RE GOING TO LOOK AT THAT

11   ISSUE.

12           THE COURT:  WELL, I'M NOT LOOKING AT THE MERITS OF IT

13   IN TERMS OF DECIDING WHETHER IT IS OR NOT, BUT I DO THINK THE

14   BROADER QUESTION AS TO WHETHER IT'S AN APPROPRIATE QUESTION FOR

15   CLASS, IT WOULD APPEAR TO BE A POLICY ACROSS THE BOARD AS TO

16   NONEXEMPT EMPLOYEES AS TO HOW THEIR NON-FULL-HOUR WAGES ARE

17   DETERMINED AND I THINK APPROPRIATE REGARDLESS OF WHETHER OR NOT

18   MERITORIOUS AT THE END OF THE DAY, APPROPRIATE FOR CLASS.

19           MS. PRITIKIN:  WELL, LET ME.

20           THE COURT:  GO AHEAD.

21           MS. PRITIKIN:  SO IF I COULD JUST ADDRESS THAT.

22   THE -- LET ME GET MY CASE.  JUST A SECOND.  THE SEE'S CANDY

23   CASE THAT WAS SUBMITTED TO YOUR HONOR MAKES IT CLEAR THAT UNDER

24   CALIFORNIA LAW ROUNDING OF UP TO 15 MINUTES IS LAWFUL AND THE

25   CASES ARE CLEAR, WE CITE THEM IN OUR PAPERS, THAT YOU CAN'T

1    CERTIFY CLASS BECAUSE THERE IS A LAWFUL POLICY.  SO THE

2    EXISTENCE OF ROUNDING OF 36 SECONDS CANNOT BE DEEMED TO BE

3    SOMEHOW IMPROPER, WHETHER IT APPLIES TO EVERYBODY OR NOT

4    BECAUSE YOU CAN ROUND UP TO 15 MINUTES.  AND WE'RE NOT EVEN

5    CLOSE TO 15 MINUTES.  SO THAT'S POINT NO. 1.

6          POINT NO. 2 IS UNDER *DUKES*, WHILE WE MIGHT HAVE COMMON

7    QUESTIONS ABOUT ROUNDING, THERE AREN'T COMMON ANSWERS, AND SO

8    IT'S A COMPLETELY UNMANAGEABLE CLASS, NO TRIAL PLAN HAS BEEN

9    PROPOSED NOR COULD IT, BECAUSE ROUNDING ONLY BECOMES AN ISSUE

10   WHEN SOMEONE WORKS AN ODD NUMBER, NO. 1, AND IN MANY

11   SITUATIONS, LIKE WITH GUILLERMO LEMUS, WE'RE TALKING ABOUT

12   COMPLETELY DE MINIMIS, 12 SECONDS A WEEK IN TERMS OF WHAT THE

13   ROUNDING ISSUE IS FOR HIM.  AND WE HAVE UNIQUE DEFENSES AS TO

14   HIS CLAIMS THAT WE HAVE TO OTHER CLAIMS AS WELL, BECAUSE IT'S

15   GOING TO BE ON AN EMPLOYEE-BY-EMPLOYEE BASIS ON WHETHER THEY

16   WERE HELPED OR HURT, WHETHER IT'S DE MINIMIS, AND WE HAVE THE

17   DUE PROCESS ABILITY TO CHALLENGE EACH ONE OF THOSE

18   DETERMINATIONS.

19          *THE COURT:*  LET ME ASK YOU THOUGH, YOU CAN ROUND TO 15

20   MINUTES, BUT ISN'T THE QUESTION AT THE END OF THE DAY STILL THE

21   SAME THAT AS LONG AS YOU'RE ROUNDING AND IF YOU ROUND UP AT A

22   CERTAIN POINT AND DOWN AT A CERTAIN POINT SO THAT IN THE END IT

23   WOULD COME OUT EQUAL, LIKE THERE WOULD BE TIMES WHEN YOU GO UP

24   TO A DOLLAR AND OTHER TIMES WHEN YOU GO DOWN TO 50 CENTS OR

25   WHATEVER, AND EITHER WAY, THE BALANCE OF IT WOULD COME OUT THE

1    SAME.

2         I KNOW THEY PICKED SOME VERY SPECIFIC EXAMPLES TO

3    DEMONSTRATE WHEN IT WORKED AGAINST THE EMPLOYEE AND THEY CAME

4    UP SHORT 5 CENTS OR A DIME OR A 15 CENTS WHAT THEY SHOULD HAVE

5    BEEN PAID FOR THEIR TIME PERIOD.  BUT IF YOU DID A SAMPLING AND

6    COULD DEMONSTRATE ACROSS THE BOARD WITH JUST A RANDOM SAMPLE

7    THERE WERE TIMES WHEN IT ROUNDED UP AND TIMES WHEN IT ROUNDED

8    DOWN, AND IN THE END, NO EMPLOYEE WAS PARTICULARLY HELPED OR

9    HARMED BY THIS, THEN YOU WOULDN'T HAVE THE VIOLATION OF THE

10   POLICY; ISN'T THAT THE QUESTION?  BECAUSE THEY'RE SAYING IT'S

11   NOT THAT HAVE YOU A ROUNDING POLICY THAT IT'S A VIOLATION, IT'S

12   THE WAY YOU'RE IMPLEMENTING IT.  THEY'RE SAYING YOU'RE ALWAYS

13   ROUNDING DOWN.

14        *MS. PRITIKIN:*  WELL, FIRST OF ALL, THEY HAVE NO

15   EVIDENCE WE'RE ALWAYS ROUNDING DOWN, WHICH IS WHY WE NEED TO

16   SHOW THAT THE EXPERT JUST REALLY JUST MADE UP SOME STUFF THAT

17   REALLY WASN'T REFLECTED IN THE DATA HE WAS GIVEN.  THAT'S THE

18   FIRST THING.

19        BUT IT'S NOT -- TRIAL BY FORMULA DOESN'T WORK FOR THIS

20   BECAUSE IT'S GOING TO VARY GREATLY AMONG EMPLOYEES, DEPENDING

21   ON THE SHIFTS THEY WORK, HOW MUCH OVERTIME THEY WORK, WHETHER

22   IT'S TRULY DE MINIMIS, WHETHER IT'S NOT DE MINIMIS, WHETHER

23   THERE WAS ROUNDING UP OR ROUNDING DOWN.  SO THEY CAN TRY TO

24   CHERRYPICK AND POINT TO INDIVIDUALS.  WE CAN TALK ABOUT

25   INDIVIDUALS, BUT THAT VERY ACT SHOWS THAT IT'S NOT SUSCEPTIBLE

1   TO CLASS CERTIFICATION.  THERE'S NOT ONE ANSWER, AND WE HAVE

2   UNIQUE DEFENSES THAT WE CAN ASSERT IN CERTAIN CASES THAT MIGHT

3   NOT BE APPROPRIATE IN OTHERS.  AND SO A TRIAL BY FORMULA TO

4   DEAL WITH THE ROUNDING ISSUE SEEMS TO US TO BE IMPROPER.

5           IN ADDITION, I THINK THE FUNDAMENTAL ISSUE IS, IF YOU

6   CAN ROUND, THEN YOU CAN ROUND.  AND IF WE'RE TALKING ABOUT A

7   MINUTE, WHETHER YOU'RE ROUNDING UP OR DOWN DOESN'T MATTER

8   BECAUSE AT THE END OF THE DAY ROUNDING IS LAWFUL, IT'S A LAWFUL

9   POLICY, AND THE NAMED PLAINTIFF CAN'T EVEN SHOW ANY HARM TO

10  HIMSELF.  HE WAS OVERPAID, AND WE SHOW THAT IN OUR PAPERS.

11          *THE COURT:*  OKAY.  GO AHEAD.

12          *MR. SULLIVAN:*  MAY I RESPOND?

13          *THE COURT:*  YES.

14          *MR. SULLIVAN:*  THANK YOU.  JUST A COUPLE QUICK... OUR

15  EXPERT ACTUALLY RESPONDED TO A DECLARATION SUBMITTED IN THE

16  OPPOSITION.  I DON'T BELIEVE THAT THE GENTLEMAN IS CALLED AN

17  EXPERT BY DENNY'S.  HE'S A DENNY'S EMPLOYEE.  BUT IT WASN'T AN

18  IMPROPER PROVISION OF AN EXPERT DECLARATION.

19          AND I BELIEVE THE COURT IS AWARE *THE SILVA VS SEE'S*

20  CASE IS OURS, AND IT'S A CERTIFIED CLASS ACTION THE DE MINIMIS

21  AFFIRMATIVE DEFENSES WERE ADJUDICATED AND REJECTED IN TERMS OF

22  FURTHER CONSIDERATION.  THE REASON WHY THEY'RE BEING REJECTED

23  IS BECAUSE IT'S SEMINAL LAW AND U.S. SUPREME COURT LAW THAT DE

24  MINIMIS CAN ONLY BE CONSIDERED WHETHER THERE IS UNASCERTAINABLE

25  TIME.  WE'RE NOT DEALING WITH UNASCERTAINABLE TIME HERE.

1          I BELIEVE YOUR HONOR IS CORRECT.  IF YOU HAVE A

2    NEUTRAL -- IT'S A TWO-STEP PROCESS THAT I NOTICED BECAUSE WE

3    JUST GOT THE OPINION AND I PERSONALLY ARGUED IT, TWO-STEP

4    PROCESS.  IT HAS TO BE NOT EVEN A NEUTRAL, BUT ALSO AT THE END

5    OF THE DAY, AND I'M QUOTING IT FROM SILVA, IT'S PROPER IF IT

6    OPEN QUOTE "IS USED IN SUCH A MANNER THAT IT WILL NOT RESULT

7    OVER A PERIOD OF TIME IN FAILURE TO COMPENSATE THE EMPLOYEES

8    PROPERLY FOR ALL THE TIME THEY HAVE ACTUALLY WORKED." CLOSED

9    QUOTE.

10         NOW WHAT IS GOING TO HAPPEN IF YOUR HONOR CHOOSES TO

11   CERTIFY THIS MATTER IS ONE OR TWO AT MOST -- I'VE NEVER SEEN

12   MORE THAN TWO BECAUSE IT WOULD BE DUPLICATIVE -- EXPERTS

13   TESTIFYING THAT THIS IS WHAT THE RECORD WILL SHOW.  MY EXPERT

14   WILL BE TESTIFYING TO THE SAME.  I'LL SAY BEFORE THE COURT

15   RIGHT NOW BECAUSE I CANNOT SAY ANYTHING ELSE, WHERE IT MAY SHOW

16   AT THE END OF THE DAY UPON CERTIFICATION CERTAIN PEOPLE WERE

17   OVERPAID, THOSE INDIVIDUALS WILL NOT RECEIVE ANY MONEY, BUT THE

18   PEOPLE WHO WERE UNDERPAID WOULD AND SHOULD RECEIVE MONEY.  IT'S

19   EMINENTLY CERTIFIABLE AS WAS DISCUSSED WITHIN *SILVA V. SEE'S.*

20         THE UNIQUE DEFENSES, YOUR HONOR, I KEEP HEARING THIS

21   UNIQUE DEFENSES.  THEY HAVEN'T BEEN RAISED YET, AND THAT'S THE

22   REASON FOR MOTION FOR DECERTIFICATION OR MOTION FOR SUMMARY

23   ADJUDICATION.  IF I WAS SITTING IN MS. PRITIKIN'S POSITION,

24   JUST TO ANALOGIZE, I WOULD WANT YOUR HONOR TO CERTIFY THE 221

25   ISSUE SO THAT SHE CAN BRING A SUBSEQUENT MSA OR TALK TO ME

 1    SAYING, HEY, YOU GOT BEAT IN ROLANDO, DISMISS IT.

 2           BUT WITH RESPECT TO WHAT YOUR HONOR IS SAYING ON THE

 3    COMPENSATION POLICY, IT IS UNDISPUTED THAT IT INVOLVES COMMON

 4    QUESTIONS AND AS WAS PRESENTED IN BOTH THE OPPOSITION AND THE

 5    REPLY, IT'S A COMMON QUESTION THAT IS GOING TO BE ANSWERED BY

 6    ONE INDIVIDUAL.  IT'S CERTIFIABLE.

 7           *MS. PRITIKIN:*  YOUR HONOR, IF I COULD MAKE ONE LAST

 8    POINT.  MR. LEMUS UNDER ARTICLE III IN ORDER TO BRING A CLASS

 9    ACTION, YOU HAVE TO HAVE STANDING AND YOU HAVE TO HAVE AN

10    INJURY.  AND THERE IS NO INJURY TO MR. LEMUS.  THERE IS NO

11    EVIDENCE OF INJURY TO MR. GUILLERMO LEMUS AS A RESULT OF

12    ROUNDING, AND BECAUSE HE DOESN'T HAVE THAT INJURY, THE COURT

13    DOESN'T EVEN NEED TO GET WHETHER OR NOT ROUNDING IS A PROPERLY

14    CERTIFIABLE CLAIM BECAUSE -- BECAUSE HE DOESN'T HAVE STANDING

15    TO BRING THAT CLAIM.  HE HAS TO BE SOMEONE WHO HAS BEEN INJURED

16    BY THE POLICY.

17           *MR. SULLIVAN:*  VERY QUICK REBUTTAL, YOUR HONOR.

18           *THE COURT:*  YES.

19           *MR. SULLIVAN:*  WE PROVIDED -- AS YOUR HONOR TESTIFIED,

20    WE PROVIDED EVIDENCE OF INJURY.  AND WITH RESPECT TO

21    IMPEACHING, I DON'T KNOW IF IT'S AN EXPERT OR JUST AN EMPLOYEE

22    MR. SEIBERT (PHONETIC) CONDUCTED ANALYSIS ONLY TO SEPTEMBER

23    19TH, 2007.  MR. GUILLERMO LEMUS HAS BEEN WORKING FOR 23 YEARS.

24    THE STATUTE OF LIMITATIONS IN THIS CASE GOES BACK TO 2006, SO

25    THERE IS NO EVIDENCE BEFORE THE COURT WHICH SHOWS, REGARDLESS

1  OF HOW ITS ARGUED, WHERE MR. CYBER HAS NOT CONSIDERED ALL THE

2  TIME RECORDS TO MR. GUILLERMO LEMUS.  HE CAN OPINE WHETHER

3  THERE WAS DAMAGE OR NOT, NOTWITHSTANDING THE FACT THAT WE

4  DISAGREE.

5       *THE COURT:*  DOES THIS HAVE TO BE DONE ON AN

6  EMPLOYEE-BY-EMPLOYEE BASIS, OR IS IT A POLICY THAT IF YOU

7  LOOKED AT IT JUST AS A GROUP, IF YOU PICKED 50 EMPLOYEES AND

8  LOOKED AT THEIR TIME RECORDS AND DETERMINED THAT OVERALL THE

9  POLICY MAY NOT HAVE BEEN FAIR TO THIS ONE GUY BUT WAS FAIR TO

10 EVERYONE ELSE, IS THE POLICY THEN FLAWED BECAUSE IT WASN'T FAIR

11 TO ONE EMPLOYEE?

12       *MR. SULLIVAN:*  NO, I WOULD NOT ARGUE THAT, YOUR HONOR.

13 WHAT YOU NEED TO DO I BELIEVE, AND THIS IS NINTH CIRCUIT, YOU

14 TAKE A LOOK AT THE COMMON QUESTION IS THIS -- DOES THIS WORK

15 OUT, AND THAT'S WHAT IS GOING TO BE ADDRESSED.  BUT IN TERMS OF

16 WHAT YOU DON'T NEED TO CERTIFY, YOU DON'T NEED TO CERTIFY

17 DAMAGES.

18       *THE COURT:*  DOES IT HAVE TO WORK OUT CASE-BY-CASE OR

19 JUST GENERICALLY?

20       *MR. SULLIVAN:*  WELL, I BELIEVE IF YOUR HONOR IS ASKING

21 IF SOMEONE WAS OVERPAID, LIKE EMPLOYEE A WAS OVERPAID, DOES

22 THAT OFFSET AND UNDERPAYMENT BY EMPLOYEE B, THERE IS LAW THAT

23 SAYS THAT CAN'T OCCUR.

24       *THE COURT:*  IF WE WOULD HAVE TO LOOK AT EACH EMPLOYEE

25 INDIVIDUALLY, DOESN'T THAT MAKE IT UNMANAGEABLE?

1          *MR. SULLIVAN:*  NO, YOU DON'T, BECAUSE YOU ONLY HAVE TO

2     LOOK AT THE DAMAGES AT THE END OF THE DAY, WHICH THE NINTH

3     CIRCUIT SAYS IN TERMS OF DAMAGES THAT'S NOT A REASON TO DENY

4     CERTIFICATION.  THAT'S THE ONLY PLACE YOU WOULD BE LOOKING AT.

5     IT'S UNDISPUTED THAT IT'S A COMMON POLICY AND THAT EVERYONE IS

6     IMPACTED BY IT.  WHEN YOU'RE JUST LOOKING AT DAMAGES, YOU WOULD

7     HAVE TO DO IT, BUT THAT'S WHAT DENNY'S HAS ALREADY DONE THROUGH

8     THEIR EMPLOYEE/EXPERT AND WHAT WE HAVE DONE THROUGH OUR

9     PROPOSED EXPERT.  IT'S JUST THE DAMAGES WHICH THE NINTH CIRCUIT

10    SAYS THERE IS NO REASON TO DENY.

11          *THE COURT:*  BUT THE POLICY IS THAT THEY ROUND.  THE

12    LAW SAYS YOU CAN ROUND AS LONG AS IT'S NEUTRAL.  SO NEUTRAL TO

13    EACH EMPLOYEE, OR NEUTRAL ACROSS YOUR EMPLOYEE POPULATION?

14    BECAUSE IF IT'S GOT TO BE NEUTRAL TO EACH EMPLOYEE, THEN IT

15    REALLY ISN'T A QUESTION OF WHAT YOUR DAMAGES ARE.  IT'S A

16    QUESTION OF LOOKING AT EACH INDIVIDUAL EMPLOYEE AND SAYING,

17    THIS POLICY, THE WAY THEY IMPLEMENTED WAS NOT NEUTRAL TO YOU

18    BECAUSE WHILE THERE WERE WEEKS WHERE YOU GOT UNDERPAID, THERE

19    WERE WEEKS WHEN YOU GOT OVERPAID, AND SO IN THE END, YOU GOT

20    PAID FOR THE EQUIVALENT OF ALL THE TIME YOU WORKED.  BUT YOU

21    WOULD HAVE TO DO THAT FOR EACH AND EVERY EMPLOYEE.  THAT WOULD

22    BE UNMANAGEABLE.

23          *MR. SULLIVAN:*  NO, THAT IS NOT WHAT WE'RE SAYING, YOUR

24    HONOR.  THAT IS NOT WHAT WE'RE ASSERTING.  I BELIEVE WHAT YOUR

25    HONOR SAID THE FIRST TIME IS CORRECT, THROUGH THE CULMINATION

1  OF THE PAPERS, WE'VE ESTABLISHED THEY HAVE A STANDARD POLICY.

2  IT'S UNDISPUTED THEY APPLY THE SAME THING OVERALL.  WE'RE

3  SAYING THAT POLICY IS WRONG FOR CERTAIN REASONS ADDRESSED BY

4  MS. PRITIKIN WHERE SHE IS SAYING I'M WRONG, THAT OUR EXPERT IS

5  TAKING THAT WHAT DENNY'S DOES IS ACTUALLY CORRECT, WE'RE SAYING

6  WHAT DENNY'S DOES IS ACTUALLY WRONG.  AND THAT'S THE ONLY

7  QUESTION YOUR HONOR NEEDS TO DETERMINE BEFORE ASSIGNING

8  DAMAGES.  IT'S ONE POLICY.  IT'S INDIFFERENT TO EACH INDIVIDUAL

9  EMPLOYEE.  IT'S A STANDARD POLICY SO THERE ARE COMMON

10  QUESTIONS.

11          *THE COURT:*  OKAY.

12          *MR. SULLIVAN:*  THANK YOU, YOUR HONOR.

13          *THE COURT:*  GO AHEAD.

14          *MS. PRITIKIN:*  I THINK MR. SULLIVAN ACTUALLY SAID

15  EXACTLY WHAT THE PROBLEM IS WITH CLASS CERTIFICATION, WHICH IS

16  THAT YOU CAN'T USE THE BENEFIT OF ONE AND TO ONE EMPLOYEES TO

17  OFFSET A HARM TO ANOTHER EMPLOYEE.  YOU CAN'T MIX THEM

18  TOGETHER.  YOU DO HAVE TO LOOK AT THEM INDIVIDUALLY.  AND

19  THAT'S THE REASON, IN ADDITION TO THE STANDING ISSUE, THAT A

20  CLASS SHOULD NOT BE CERTIFIED.

21          *THE COURT:*  DID YOU ADDRESS YOUR STANDING ISSUE?

22          *MR. SULLIVAN:*  WELL, I DID, YOUR HONOR.  IF THE

23  STANDING ISSUE IS THAT HE DIDN'T OFFER A LOSS, YOUR HONOR HAS

24  REFERRED TO THE FACT THAT WE DID PROVIDE SEVERAL EXAMPLES WHERE

25  HE SUFFERED A LOSS AND --

1        *THE COURT:* OH, RIGHT.  YOU SAID THEY DIDN'T HAVE THE

2   WHOLE TIME PERIOD.  SORRY.

3        *MR. SULLIVAN:* YES.  THERE'S STANDING.  AND AGAIN,

4   THAT'S AN ISSUE THAT IS CERTIFIABLE AND THAT'S AN ISSUE THAT IF

5   THESE UNIQUE DEFENSES WANT TO BE BROUGHT UP, THAT'S ONE, THEN

6   THAT'S A REASON FOR A MOTION FOR SUMMARY ADJUDICATION FOR

7   JUDGMENT.

8        *THE COURT:* YOU HAVE TO DETERMINE HIS LOSS OVER HIS

9   ENTIRE WORK PERIOD, LOSS OR GAIN?

10       *MR. SULLIVAN:* I'M SORRY, YOUR HONOR?

11       *THE COURT:* TO DETERMINE WHETHER OR NOT THE

12  IMPLEMENTATION OF THEIR ROUNDING POLICY IS A VIOLATION, YOU

13  HAVE TO LOOK AT HIS PAY HISTORY FOR HIS ENTIRE WORK PERIOD.

14       *MR. SULLIVAN:* THAT'S THE WAY *SILVA V. SEE'S* IS TAKING

15  IT, YES, YOUR HONOR.  IT'S UP FOR PETITION FOR REVIEW.  WE

16  ARGUED ALTERNATIVELY THAT REGARDLESS HOWEVER YOU LOOK AT IT,

17  WHETHER IT'S EVERY TWO WEEKS PURSUANT TO LABOR CODE 204 OR

18  OVERALL, THERE'S A LOSS FOR NOT ONLY MR. LEMUS BUT A MAJORITY

19  OF THE CLASS.

20       *THE COURT:* ALL RIGHT.  THE OVERTIME POLICY, AGAIN THE

21  WORKDAY.  SOMEBODY GIVE ME A SUMMARY OF THAT WHOLE ISSUE

22  BECAUSE I LOOKED AT SO MUCH STUFF, I'M LOST ON THAT ONE NOW.

23       *MR. SULLIVAN:* WHAT WE'VE GOT, YOUR HONOR, IS VERY FEW

24  COMMON QUESTIONS.  DENNY'S DEFINES ITS WORKDAY AS FROM 7:01

25  A.M. TO 7:00 THE NEXT DAY.  WHAT WE HAVE HERE IS A SELECT

1  PORTION.  IT'S ABOUT A THIRD.  SO WE'RE CONTENDING IT'S ABOUT

2  8,000 INDIVIDUALS, SO IT'S A SUBCLASS, WERE REQUIRED TO WORK

3  STARTING AT 6:00 A.M.  UNDER CALIFORNIA LAW, IF YOU WORK MORE

4  THAN EIGHT HOURS IN THE WORKDAY, YOU HAVE TO RECEIVE OVERTIME

5  COMPENSATION.

6         THE COMMON QUESTIONS ARE AS FOLLOWS:

7         IT IS UNDISPUTED, INDIVIDUALS WORKED MORE THAN EIGHT

8  HOURS IN A WORKDAY AS NATURALLY DEFINED AND DIDN'T RECEIVE

9  OVERTIME COMPENSATION.  DENNY'S DOES HAVE THE RIGHT, AND THEY

10 WILL BE, IF IT'S CERTIFIED OR EVEN IF IT'S NOT, ASSERTING THE

11 DEFENSE THAT THEY HAVE A LEGITIMATE BUSINESS REASON TO BRING

12 PEOPLE IN AT 6:00 SO THEY IN ESSENCE WORK ONE SINGLE SHIFT OVER

13 THE COURSE OF TWO DAYS AND JUST DO NOT PROVIDE OVERTIME

14 COMPENSATION.  WE'RE GOING TO ASSERT THAT'S ILLEGAL.  BUT YOUR

15 HONOR IS GOING TO DECIDE DOES DENNY'S HAVE A LEGITIMATE

16 BUSINESS PRACTICE.  EVERYTHING ELSE IS NOT ONLY COMMON BUT

17 ASCERTAINABLE FROM THEIR OWN EMPLOYEE TIME RECORDS.

18        IT IS SOMETHING I DID WANT TO ADDRESS BECAUSE I KNOW

19 YOUR HONOR JUST ADDRESSED IT IN I BELIEVE IT WAS THE *TOURGEMAN*

20 *CASE V. COLLINS*.  I'M WILLING TO STIPULATE, NOT ONLY FOR THIS

21 ISSUE BUT ALL ISSUES, WE'RE JUST GOING TO BE SUBMITTING ON

22 DENNY'S VERIFIED TIME RECORDS WE'RE NOT GOING TO BE BRINGING IN

23 PEOPLE SAYING, OH, YEAH, I WORKED, AND I DIDN'T GET THAT.  I'LL

24 LIMIT MYSELF AT THIS POINT TO THOSE TIME RECORDS AND AS SET

25 FORTH IN CALIFORNIA PRECEDENT.

1      *THE COURT:*  SO IF THEIR WORKDAY STARTS AT 7:01 AND

2   SOMEONE COMES IN AT 6:00 AND THEY WORK 9 HOURS BUT THAT ONE

3   HOUR FROM 6:00 TO 7:00 IS ON THE PREVIOUS WORKDAY, THEN THEY

4   DON'T GET OVERTIME FOR THAT BECAUSE IT'S NOT ON THE SAME

5   WORKDAY?

6      *MR. SULLIVAN:*  CORRECT.

7      *THE COURT:*  BUT THE WORKDAY GOES TO 7:00 THE NEXT

8   MORNING.

9      *MR. SULLIVAN:*  RIGHT.

10     *THE COURT:*  SO IF YOU COME IN THE NEXT MORNING AT

11  6:00, ISN'T THAT HOUR ON THE PREVIOUS WORKDAY AND SO AREN'T YOU

12  GETTING AN HOUR OF OVERTIME?  BECAUSE YOU STILL WORKED.

13     *MR. SULLIVAN:*  YOU ARE ON OCCASIONS.  AND THAT'S AGAIN

14  WHY WE'RE NOT GOING TO BE BRINGING IN EXTRINSIC EVIDENCE.  THIS

15  IS SOMETHING JUST LOOKING AT THE TIME RECORDS ITSELF IS GOING

16  TO BE SET FORTH THROUGH TWO EXPERTS.  BUT THIS IS SOMETHING

17  AGAIN, BRINGING UP THE IRRESPONSIBILITY MS. PRITIKIN DISCUSSED

18  BEFORE.  WE'VE NEVER ASSERTED THAT.  WE PROVIDED THEM WITH A

19  20-PAGE MEET-AND-CONFER LETTER, AND WE'VE NEVER ASSERTED THAT

20  YOU OWE.  IF THEY WORKED TWO CONSECUTIVE DAYS AND THERE ISN'T

21  UNDER COMPENSATION, WE'RE NOT SEEKING THAT AMOUNT.

22     *THE COURT:*  THIS WOULD HAPPEN PRESUMABLY IF SOMEONE

23  CAME IN ON THURSDAY AT 6:00 A.M. AND WORKED PAST 2:00 THAT

24  THURSDAY, SO THEY HAVE NOW WORKED MORE THAN 8 HOURS, BUT THEY

25  ACTUALLY STARTED ON THE WEDNESDAY WORKDAY BECAUSE THE 6:00 TO

1   7:00 WAS WEDNESDAY.

2           *MR. SULLIVAN:*  THE DENNY'S --

3           *THE COURT:*  AND IF --

4           *MR. SULLIVAN:*  I'M SORRY.

5           *THE COURT:*  -- THEY DON'T COME BACK IN THE NEXT DAY AT

6   6:00, THEN THEY'VE LOST THAT HOUR?

7           *MR. SULLIVAN:*  IF THEY DON'T COME IN ON FRIDAY, OR IF

8   THEY COME IN ON FRIDAY AND THEY WORK LESS.  THERE ARE EXAMPLES

9   WHEN WE'VE PROVIDED, AT LEAST TO THE LITTLER FIRM.  I APOLOGIZE

10  IF THEY'RE NOT IN THE MOTION.  BUT EVEN WHERE YOU WORKED, YOU

11  WORK AN HOUR AND A HALF AND THE NEXT DAY, YOU ONLY WORK 15

12  MINUTES EXTRA.  BUT AGAIN, THIS IS ALL ASCERTAINABLE FROM THE

13  TIME RECORDS AND TIME RECORDS ALONE.

14          *THE COURT:*  THAT'S FINE.  LET ME HEAR WHAT THEY HAVE

15  TO SAY.

16          *MS. PRITIKIN:*  FIRST OF ALL, DENNY'S IS A 24-HOUR

17  OPERATION.

18          *THE COURT:*  I KNOW THAT.

19          *MS. PRITIKIN:*  NO MATTER WHERE THE WORKDAY STARTS,

20  THERE IS SOMEBODY WHO IS GOING TO HAVE TIME THAT WILL GO FROM

21  ONE DAY TO ANOTHER.  SO THERE IS NO WAY TO COME UP WITH SOME

22  SYSTEM THAT IT DOESN'T CROSS INTO WHAT SOME PEOPLE'S SHIFTS MAY

23  BE.

24          *THE COURT:*  WELL, SHOULDN'T THE SYSTEM JUST BE FROM

25  WHEN YOU CLOCK IN, REGARDLESS WHAT DAYS?

1          *MS. PRITIKIN:* WELL, THAT'S NEITHER WHAT THE FLSA SAYS

2    OR CALIFORNIA SAYS.  BOTH THE FLSA AND THE CALIFORNIA DLSE HAVE

3    REGULATIONS THAT SAY EMPLOYERS HAVE TREMENDOUS DISCRETION TO

4    DEFINE WORKDAY AND WORKWEEK AS LONG AS IT'S CONSISTENT, THERE'S

5    NO EVIDENCE IT EVER CHANGED, AND AS LONG AS THERE ARE

6    LEGITIMATE REASONS AND WE'VE SHOWN THAT THE LEGITIMATE REASONS

7    FOR CASH MANAGEMENT PROCEDURES AND THOSE KIND OF THINGS THE WAY

8    THE SHIFTS ARE SET UP, AND IT'S NOT INTENDED TO EVADE OVERTIME

9    OBLIGATIONS, WHICH THERE IS NOT A SHRED OF EVIDENCE TO SUGGEST

10   THAT IS IN ANY WAY THE MOTIVATION.

11          THAT'S ANOTHER ONE TOO, WHERE WE COME BACK TO THE

12   STANDING OF MR. GUILLERMO LEMUS.  THERE IS NO EVIDENCE, YOUR

13   HONOR THAT THE 7:00 A.M. START OF THE DAY UNFAIRLY DEPRIVED

14   MR. LEMUS OF OVERTIME.  AND THAT IF THE TIME OF DAY WERE MOVED

15   THAT IT WOULD AFFECT HIM OR SOMEBODY ELSE IN ANY SPECIFIC WAY.

16   THERE IS JUST NO EVIDENCE FOR THAT, THERE IS NO STANDING, THERE

17   IS NO BASIS FOR CLASS CERTIFICATION.

18          AND THERE IS NO PRACTICAL WAY TO DEFINE WHICH

19   EMPLOYEES BECAUSE EMPLOYEES WORK MANY SHIFTS.  AND WE SUBMITTED

20   DECLARATIONS TO SHOW THAT THEY JUST DON'T WORK SOME SET SHIFT.

21   AND IN THE *IN RE: WELLS FARGO HOME MORTGAGE OVERTIME*

22   LITIGATION, IT'S VERY CLEAR JUST BECAUSE YOU HAVE A UNIFORM

23   POLICY DOESN'T MAKE IT SUITABLE FOR CLASSIFICATION.

24          WHILE COUNSEL MAY SAY WE'RE NOT GOING TO BRING IN ANY

25   EXTRINSIC EVIDENCE, WE HAVE A RIGHT TO DEFEND OURSELVES ON AN

1   INDIVIDUAL BASIS WITH RESPECT TO EMPLOYEES.  FOR EXAMPLE, THERE

2   MAY BE EMPLOYEES WHO REQUESTED A SHIFT THAT CROSSES OVER THE

3   DAYS, THERE MAY BE SITUATIONS WHERE EMPLOYEES PARTICIPATED OR

4   THERE WERE BUSINESS REASONS WHY THEY WERE SCHEDULED THE WAY

5   THEY WERE SCHEDULED, AND THOSE ARE INDIVIDUALIZED

6   DETERMINATIONS THAT AREN'T SUITABLE FOR CLASS CERTIFICATION.

7         AT THE END OF THE DAY, IT WAS LAWFUL AND LAWFUL, AND

8   THERE IS NOTHING TO SUGGEST IT WAS UNLAWFUL FOR DENNY'S TO SET

9   THE TIME WHERE IT DID.  AND IT DOES EVEN OUT, JUST BY

10   DEFINITION, BECAUSE YOU HAVE PEOPLE WHO DON'T WORK JUST ONE

11   DAY, EIGHT HOURS THAT DON'T CROSSOVER TO TWO DAYS, AND THERE IS

12   NO EVIDENCE TO SUGGEST ANYTHING TO THE CONTRARY.

13         *THE COURT:*  OKAY.

14         *MR. SULLIVAN:*  BRIEFLY, YOUR HONOR?

15         *THE COURT:*  YES, GO AHEAD.

16         *MR. SULLIVAN:*  THERE IS NO DEFENSE THAT IS NOT REALLY

17   RELEVANT THAT DENNY'S IS A 24-HOUR OPERATION.  WE'LL STIPULATE

18   TO THAT, BUT THAT DOESN'T PROVIDE YOU AN EXCUSE TO THE OVERTIME

19   LAWS.  MS. PRITIKIN REFERRED TO FLSA AND THE CALIFORNIA LAW.  I

20   HAVEN'T SEEN ANYTHING IN THEIR OPPOSITION, BUT AGAIN, THAT'S A

21   REASON TO CERTIFY.  IF YOU HAVE A LEGAL DEFENSE, THAT'S A

22   COMMON QUESTION THAT CAN BE ADDRESSED BY YOUR HONOR IN SUMMARY

23   ADJUDICATION.

24         SHE TALKS ABOUT STANDING THAT'S PROVIDED IN OUR

25   PAPERS.  MR. LEMUS WAS PERSONALLY HARMED BY THIS ISSUE.  THAT'S

1    EXHIBITS 19 AND 20.  SHE REFERS TO THE *WELLS FARGO* CASE, AND

2    WHAT WE'RE DEALING WITH HERE, YOUR HONOR, IS MS. PRITIKIN IS

3    ESTABLISHING WHY CLASS SHOULD BE CERTIFIED.  YOU HAVE A COMMON

4    POLICY.  FOR HER TO ARGUE THAT MANAGERS ABROGATED THAT OR

5    MANAGERS DID NOT SUSTAIN THAT POLICY IS IMPROPER UNDER THE

6    CASES THEY CITED TO.  IF YOU HAVE A COMMON POLICY PURSUANT TO

7    *BRINKER* CALIFORNIA SUPREME COURT, THAT'S EMINENTLY CERTIFIABLE.

8        THE LAST THING, YOUR HONOR, IS WITH RESPECT TO THESE

9    INDIVIDUALS, SUPPOSEDLY THE INDIVIDUAL QUESTIONS, SOMEONE

10   REQUESTED A SHIFT, SOMEBODY WANTED TO COME IN EARLY.  OVERTIME

11   IS UNWAIVABLE.  THOSE AREN'T DEFENSES.  AND IF THEY ARE, THEY

12   CAN BE RAISED IN A MOTION FOR SUMMARY ADJUDICATION BECAUSE IT

13   WOULD HAVE TO BE A DEFENSE OF LAW.  I BELIEVE IT'S THE *OVERTON*

14   CASE.  AND IT'S MORE LIKELY THAN NOT, I'M MISREMEMBERING.  BUT

15   THAT JUST CAME OUT LESS THAN A YOUR AGO.  AND IT'S

16   LONG-STANDING LAW.  1194, THEY'RE UNWAIVABLE.  YOU CAN'T SAY,

17   OH, WELL, I DIDN'T WANT TO WORK IT.  IF YOU WORK IT, YOU HAVE

18   TO BE PAID FOR IT.

19       *MS. PRITIKIN:*  YOUR HONOR, IF I COULD, JUST ONE THING.

20   ON EXHIBIT 19 THAT COUNSEL WAS REFERENCING, IT SHOWS THAT THE

21   PERSON WHO -- GUILLERMO LEMUS' REPORT, ON THURSDAY, HE CLOCKED

22   IN AT  7 A.M., ON FRIDAY 7 A.M., ON SATURDAY, HE CLOCKED IN AT

23   7 A.M. AND ON SUNDAY, HE CLOCKED IN ON 7 A.M., AND ON TUESDAY,

24   HE CLOCKED IN AT 5:59, AND ON WEDNESDAY, HE CLOCKED IN AT 7

25   A.M.  SO HIS SCHEDULE HAD HIM CLOCKING IN AT 7:00.  HE IS NOT

1    SOMEONE WHO CAN SHOW HARM OR LOSS OF OVERTIME, SO I DON'T KNOW

2    HOW THIS DOCUMENT HELPS PLAINTIFFS' CASE TO SHOW SOME KIND OF

3    DAMAGE TO HIM.

4          *THE COURT:*  WHERE DID THE 5:57 COME FROM?

5          *MR. SULLIVAN:*  I BELIEVE IT'S ACTUALLY 5:57, AND

6    THAT'S THE PORTION HIGHLIGHTED.

7          *MS. PRITIKIN:*  BUT THE NEXT DAY, HE COMES IN AT 7.

8          *MR. SULLIVAN:*  THAT'S OVERTIME.

9          *MS. PRITIKIN:*  NO, BUT ON TUESDAY AT 5:59, HE WORKS

10    1.02 HOURS, SO I DON'T SEE WHERE THE OVERTIME ISSUES IS

11    ESTABLISHED BY THIS DOCUMENT.  THAT'S ALL I'M SAYING, THERE IS

12    NOT EVIDENCE OF HARM.

13          *THE COURT:*  OKAY.  WE'RE RUNNING OUT OF TIME, AND I

14    HAD A QUESTION ABOUT THE CONFINED MEAL PERIOD ISSUE.  I DIDN'T

15    SEE ANYTHING THAT SAID EMPLOYEES COULD NOT LEAVE THE PREMISES.

16    I UNDERSTAND THAT WHEN THEY'RE THERE AND THEY'RE GOING TO EAT,

17    THEY HAVE TO EAT IN A DESIGNATED AREA, BUT THEY CAN LEAVE,

18    RIGHT?

19          *MR. SULLIVAN:*  NO, YOUR HONOR, THAT'S NOT WHAT...

20          *THE COURT:*  THEY CAN'T LEAVE?  BECAUSE THEY SAY THEY

21    CAN IN THEIR PAPERS.  YOU DIDN'T SHOW ME ANY POLICY THAT IF

22    YOU'RE ON YOUR BREAK, THEN YOU CAN'T GO ACROSS THE STREET TO

23    THE BANK OR YOU CAN'T LEAVE THE PREMISES.  AND ISN'T THAT STEP

24    1?  CONFINED DOESN'T MEAN THAT FOR A SPECIFIC, YOU WANT TO EAT

25    A MEAL, I DON'T WANT YOU EATING IN THE RESTAURANT WITH THE

1    CUSTOMERS, YOU HAVE TO SIT OVER HERE, I THINK THAT'S

2    LEGITIMATE, BUT YOU CAN'T LEAVE THE FACILITY.  AND THERE'S

3    NOTHING HERE TO SHOW ME THAT THEY'RE NOT ALLOWED TO LEAVE.

4          *MR. SULLIVAN:*  I THINK THE BEST EXAMPLE OF THAT WOULD

5    BE *BRINKER*, YOUR HONOR, WHERE IT SAID SOMETHING LIKE THIS, AN

6    ILLEGAL POLICY, ESPECIALLY WHERE DENNY'S HAS DONE DEFENDING

7    THIS POLICY, IF IT'S FACIALLY ILLEGAL, WHICH WE CONTEND IT IS,

8    I UNDERSTAND WHAT YOUR HONOR SAYING.  IF IT'S FACIALLY ILLEGAL,

9    IT'S EMINENTLY CERTIFIABLE, SOMETHING FOR THE TRIER OF FACT TO

10   DETERMINE COULD THEY LEAVE OR COULD THEY NOT LEAVE.

11          NOW IF YOUR HONOR IS STATING THE WAY YOU READ IT, IT

12   DOESN'T PRECLUDE SOMEBODY FROM LEAVING, THEN I DON'T HAVE AN

13   ANSWER FOR YOU.  BUT LOOKING AT IT AGAIN, I KNOW I'M SAYING IT

14   A LOT, BUT THE PLAIN LANGUAGE.  IT SAYS THAT YOU HAVE TO EAT

15   WHERE THE MANAGERS TELL YOU TO EAT.  THERE'S EVIDENCE SAYING

16   THAT MORE OFTEN THAN NOT, I BELIEVE MR -- I THINK GUILLERMO

17   SAID ON OCCASION, HE COULD LEAVE IF HE GOT PERMISSION, BUT

18   THAT'S THE CONTROL ASPECT OF IT.

19          *THE COURT:*  WHO DID HE GET PERMISSION FROM?  HE'S THE

20   MANAGER.

21          *MR. SULLIVAN:*  THAT'S THE KEY.  UNDER MEAL PERIODS,

22   THE MANAGER CAN'T HAVE ANY CONTROL OVER YOU, AND THEY SAY THEY

23   WERE.  THAT'S THE KEY.  WE'RE LOOKING AT A FACIALLY ILLEGAL

24   POLICY.  IF DENNY'S WANTS TO ARGUE, WELL, THAT'S NOT WHAT IT

25   MEANT, THAT'S FOR THE TRIER OF FACT, IT'S EMINENTLY TRIABLE

1  PURSUANT TO *BRINKER*.

2          *THE COURT:*  OKAY.  DO YOU HAVE ANYTHING ON THAT ONE?

3          *MS. PRITIKIN:*  YOUR HONOR, WE SUBMITTED DECLARATIONS

4  FROM EMPLOYEES WHO TESTIFIED THAT THEY REGULARLY LEFT THE

5  PREMISES DURING THEIR BREAKS.  THERE WAS NO WRITTEN POLICY THAT

6  PRECLUDES THEM FROM LEAVING DURING THEIR MEAL BREAK.  AND TO

7  THE EXTENT THAT MR. LEMUS CLAIMS THAT HIS MANAGER PUT SOME KIND

8  OF RESTRICTIONS ON HIM, THERE'S NOTHING TO SHOW THAT THERE IS

9  SOME UNIFORM POLICY THAT PROHIBITS EMPLOYEES FROM LEAVING.  IN

10 FACT, LET ME JUST PULL THE POLICY.

11         *THE COURT:*  COULD YOU HELP ME WITH IT?  BECAUSE I KNOW

12 I LOOKED AT IT, BUT I CAN'T FIND THE EXHIBIT NOW.

13         *MS. PRITIKIN:*  YES.  JUST ONE MOMENT, YOUR HONOR.

14 SORRY.

15         *THE COURT:*  THAT'S FINE, GO AHEAD.  THERE'S A LOT OF

16 PAPER.

17     *(PAUSE IN THE PROCEEDINGS.)*

18         *MS. PRITIKIN:*  I KNOW IT'S IN HERE.  WELL, I KNOW WE

19 HAVE THE BREAK POLICY, SO ...

20         *MR. SULLIVAN:*  IS THIS IT?

21     *(PAUSE IN THE PROCEEDINGS.)*

22         *THE COURT:*  OKAY.  WELL...

23         *MR. SULLIVAN:*  DO YOU WANT TO USE MINE?

24         *MS. PRITIKIN:*  EXHIBIT 11 OF THE PLAINTIFFS' PAPERS

25 DEAL WITH THE DISCOUNTED MEALS AND TALK ABOUT THAT IF YOU GET A

1    DISCOUNTED MEAL, WHERE YOU SHOULD WORK AND MAKES REFERENCE TO

2    THAT THERE MAY BE ADDITIONAL STATE LAW REQUIREMENTS ON BREAKS.

3    I BELIEVE THERE IS ANOTHER WRITTEN POLICY THAT TALKS ABOUT THE

4    FACT THAT YOU CAN LEAVE THE PREMISES.  I KNOW WE'VE SUBMITTED

5    THE EVIDENCE TO SHOW THAT THAT ACTUALLY HAPPENS.

6         AND MANAGERS DETERMINE WHERE, IF YOU'RE GOING TO STAY

7    ON PREMISES, YOU CAN EAT, BUT YOU DON'T HAVE TO STAY ON THE

8    PREMISES.  AND WE SUBMITTED EVIDENCE TO SHOW THAT YOUR HONOR.

9    SO I WILL IDENTIFY THE OTHER DOCUMENT.  I APOLOGIZE FOR TAKING

10   SO LONG.

11        *THE COURT:*  THAT'S ALL RIGHT.  AND I NEED TO WRAP THIS

12   UP FOR A LOT OF REASONS, BUT THE ONLY OTHER QUESTION THAT I

13   WANTED TO JUST PUT OUT THERE, AND MAYBE THIS IS JUST OBTUSE,

14   BUT ON THIS QUESTION ABOUT THE VALUE OF THE EMPLOYEE DISCOUNTS

15   FOR THE MEALS AND THE DRINKS BEING FACTORED IN AS PART OF

16   DETERMINING WHAT THEIR WAGES SHOULD BE FOR OVERTIME, IS IT

17   FACTORED IN FOR THEIR WAGES, FOR THEIR TAXES AND WITHHOLDING?

18   IF IT'S NOT PART OF YOUR REGULAR WAGE, WHY SHOULD IT BE PART OF

19   YOUR OVERTIME WAGE?

20        *MR. SULLIVAN:*  THAT'S THE KEY, YOUR HONOR.  THAT'S WHY

21   WE SUBMIT THAT IT'S CERTIFIABLE.

22        *THE COURT:*  WELL, I LOVE THAT EXPRESSION, BY THE WAY.

23   NO, GO AHEAD.

24        *MR. SULLIVAN:*  WHAT?

25        *THE COURT:*  "IT'S CERTIFIABLE."  NO, GO AHEAD.

1          *MR. SULLIVAN:*  OH, I'M SORRY, YOUR HONOR.

2          I BELIEVE THERE IS RECENT CASE LAW OUT THERE.  ADAM

3     USUALLY KNOWS IT A LOT FASTER THAN I DO, BUT THAT TALKS ABOUT

4     THAT THAT IS A RELEVANT FACTOR, BUT WE SUBMIT THAT

5     CERTIFICATION IS PROPER BECAUSE THAT'S SOMETHING THAT IT, AND

6     RIGHT NOW, I'M KIND OF -- I'M TIRED, I'M SORRY, BUT I DON'T

7     EVEN KNOW WHICH WAY IT GOES.  BUT THAT'S A VALID POINT AND I

8     THINK A CENTRAL DISTRICT CASE --

9          *THE COURT:*  THE BROADER QUESTION THEN, I MEAN, YOU

10    JUST WANT TO LOOK AT IT WHERE IT WOULD ADD VALUE TO WHAT YOUR

11    OVERTIME VALUE WOULD BE, BUT IF IT SHOULD BE CONSIDERED PART OF

12    YOUR PAY, AND SO YOU'RE GETTING THIS EMPLOYEE DISCOUNT FOR

13    MEALS, SO THERE IS A VALUE.  AND IS THAT PART OF WHAT SHOULD BE

14    CONSIDERED PART OF YOUR PAY AND SHOULD DENNY'S THEN BE

15    REPORTING THAT AS PART OF YOUR PAY AND YOUR WITHHOLDING?

16         *MR. SULLIVAN:*  YES.

17         *THE COURT:*  IF IT'S NOT BEING DONE THERE, THEN WHY

18    SHOULD THERE BE THIS BENEFIT TO IT BE BEING FACTORED IN JUST

19    FOR DETERMINING YOUR OVERTIME?

20         *MR. SULLIVAN:*  WELL, UNDER *ADOMA* AND UNDER THE CAL

21    REGS, IT HAS TO BE, ALL REMUNERATION.  IT'S UNDISPUTED.

22         *THE COURT:*  HOW WOULD YOU POSSIBLY KEEP TRACK OF EVERY

23    TIME SOMEBODY HIT THE SODA MACHINE AND BOLTED DOWN A DIET

24    PEPSI?

25         *MR. SULLIVAN:*  WELL, THE SODA MACHINE, LIKE I SAID, I

1   HAVE A DUTY TO PROSECUTE EVERYTHING.  WHAT WE'RE DEALING WITH

2   THE SODA, WHICH WE DON'T KNOW AT THIS POINT.  THE PMK WAS VERY

3   NICE ON THE ISSUE, BUT SHE COULDN'T RECOLLECT, BUT IT'S THE

4   DISCOUNTED MEALS, AND THAT'S A SLIP CARD SO IT WOULD BE IN THE

5   COMPUTERIZED RECORDS.  YES, I HAVE TO SAY, YOUR HONOR, I'M

6   GOING AFTER EVERYTHING.  YOU HAVE TO TELL ME, MR. SULLIVAN,

7   YOU'RE OVERREACHING.

8        THE COURT:  I THINK YOU'RE OVERREACHING ON THE SODAS

9   AND THE COFFEE.  THAT WOULD BE APPEAR TO BE DE MINIMIS.  WHEN

10  YOU THINK ABOUT, I KNOW WHAT THEY CHARGE CUSTOMERS, BUT FOR THE

11  MOST PART, THE ACTUAL COST OF THE SODAS THE COFFEES AND STUFF

12  IS NEGLIGIBLE TO THE COMPANY.

13       MR. SULLIVAN:  RIGHT, RIGHT.

14       THE COURT:  NOW THE DISCOUNTED MEAL THING, WE'LL TAKE

15  A HARDER LOOK AT BECAUSE THAT'S TRACKABLE.

16       MR. SULLIVAN:  YES, WE SUBMIT IT'S ASCERTAINABLE

17  BECAUSE THE PMK DID TESTIFY TO THAT.  THEY HAVE, I BELIEVE, A

18  SLIP CARD, THE MANAGER HAS TO OKAY IT, AND IT'S RECEIVED

19  THROUGH, I GUESS THE CASH REGISTER OR THE COMPUTERS.  A CASH

20  REGISTER RECORD.

21       THE COURT:  JUST THAT, AND THEN WE'LL WRAP UP.

22       MS. PRITIKIN:  YES, YOUR HONOR.  I'LL BE BRIEF, YOUR

23  HONOR.  THE ISSUE ON THE DISCOUNTED MEALS IS, THERE ARE TWO

24  IMPORTANT ISSUES FOR YOUR HONOR TO LOOK AT.  NO. 1 IS THAT THIS

25  IS DONE FOR THE BENEFIT OF THE EMPLOYER, SO IT'S NOT -- IT

1    SHOULDN'T BE INCLUDED AS A MATTER OF LAW, AND BECAUSE IT'S A

2    LAWFUL POLICY, THERE'S NO REASON FOR CLASS CERTIFICATION.

3         BUT EVEN IF YOU GET BEYOND THAT, THERE IS NO

4    PREDOMINANCE BECAUSE EACH -- IT REQUIRES INDIVIDUALIZED

5    INQUIRIES AS TO NOT ONLY THE HOW MUCH THE EMPLOYEE PAID FOR THE

6    MEAL BUT ALSO WHAT THE VALUE OF THE MEAL WAS IN TERMS FOR

7    DENNY'S.  AND BECAUSE PEOPLE GET DIFFERENT THINGS DIFFERENT

8    DAYS AND SOMETIMES THEY'RE PAYING THE EXACT COST, IT'S A WASH.

9    YOU HAVE PEOPLE WHO DON'T WORK OVERTIME EVERY WEEK.  SO IT'S A

10   VERY FACT-INTENSIVE INQUIRY THAT IS GOING TO REQUIRE

11   INDIVIDUALIZED PROOF AS TO EACH INDIVIDUAL.

12        *THE COURT:*  OKAY.

13        *MR. SULLIVAN:*  MAY I BRIEFLY?

14        *THE COURT:*  YES.

15        *MR. SULLIVAN:*  WE PROSECUTE THESE CASES VERY OFTEN.

16   YOUR HONOR, JUST HIT IT ON THE HEAD.  THE SODA, WE COULDN'T

17   GET, BUT NOT ONLY WHERE THE DISCOUNTS WERE TAKEN BUT THE VALUE

18   IS DENNY'S THEY HAVE SHOULD IN PART THROUGH THEIR TAXABLE

19   RECORDS.  THAT IS ONE OF THE THINGS WE DON'T SET UP FOR.  MY

20   FIRM GETS ALONG VERY WELL WITH LITTLER AS MUCH AS WE DISAGREE

21   WITH THEM.  TAXABLE RECORDS OPEN UP A PRIVACY ISSUE, BUT IT IS

22   SOMETHING ASCERTAINABLE, IF YOUR HONOR CHOOSES TO CERTIFY, WILL

23   BE DISCOVERABLE.

24        *THE COURT:*  AND ONE JUST LAST NOTE BECAUSE YOU GUYS

25   OBVIOUSLY PRACTICE IN THIS AREA AND YOU MAY BE MORE ON TOP OF

1    THIS THAN THE COURT IS, BUT I DO KNOW THERE ARE CASES RIGHT

2    NOW, OR AT LEAST A CASE RIGHT NOW PENDING IN FRONT OF THE NINTH

3    CIRCUIT INVOLVING THE WHOLE INTERPLAY BETWEEN RULE 23 AND PAGA

4    AND JURISDICTION AND FEDERAL COURT.  AND ARE EITHER OF YOU

5    AWARE OF ANYTHING THAT WE SHOULD WAIT ON TO HEAR FROM THE NINTH

6    CIRCUIT BEFORE WE DECIDE THINGS IN THIS CASE?  BECAUSE

7    OBVIOUSLY YOU HAVE ALL BRIEFED IT EXTENSIVELY.  THERE ARE

8    SPLITS ALL OVER THE PLACES TO CLASS CERTIFICATION AND PRIVATE

9    ATTORNEY GENERAL ACTIONS.

10            MS. PRITIKIN:  I'M NOT AWARE OF ANYTHING THAT'S

11   IMMINENT.

12            THE COURT:  OKAY.

13            MS. PRITIKIN:  I KNOW THE CALIFORNIA SUPREME COURT IS

14   LOOKING AT PAGA IN THE CONTEXT OF CONCEPCION ON ARBITRATION,

15   BUT I'M NOT AWARE OF ANY OTHER THING PENDING THAT SQUARELY PUTS

16   THIS ISSUE IN FRONT OF THE NINTH CIRCUIT.  ARE YOU?

17            MR. SULLIVAN:  I'M SORRY.  I WOULD CONCUR.  IF IT

18   HELPS, YOUR HONOR, I BELIEVE MAGISTRATE GALLO JUST LESS THAN A

19   COUPLE MONTHS AGO TOLD ME HE'S AWARE OF SOMETHING.

20            THE COURT:  I KNOW THERE ARE THE WAL-MART CASES, BUT I

21   DON'T THINK THAT'S ON THIS ONE.

22            MR. ROSENTHAL:  I'M NOT CURRENTLY AWARE.  I MEAN,

23   FIELDS, IT HAS GONE BACK AND FORTH BETWEEN THE DISTRICTS, AND I

24   UNDERSTAND THE MOST RECENT AND PROBABLY BEST ARTICULATION OF

25   THIS ISSUE IS THE FIELDS, OUT OF THE CENTRAL DISTRICT, BUT

1    CERTAINLY IT IS RIPE FOR REVIEW AT SOME POINT.

2              *THE COURT:* ALL RIGHT.  I GIVE YOU BLANKET PERMISSION

3    IF YOU HEAR OF ANYTHING BEFORE WE ISSUE AN ORDER IN THIS CASE

4    THAT YOU THINK WE SHOULD CONSIDER, JUST SEND IT IN.  MAKE SURE

5    YOU LET THE OTHER SIDE KNOW YOU'RE SENDING IT IN.  BUT DON'T BE

6    FILING THINGS, THEY SENT YOU... I WANT IT, BECAUSE WE HAVE A

7    MILLION THINGS GOING ON AND WE TRY TO STAY ON TOP OF THIS

8    STUFF, BUT I ASSUME YOU WILL HAVE YOUR FINGER ON THIS PULSE

9    BETTER THAN WE WILL.  SO IF ANYTHING DOES COME UP THAT YOU HEAR

10   ANYTHING HAS GOTTEN FILED THAT YOU THINK WE SHOULD LOOK AT THE

11   BRIEFING ON, WE WOULD LIKE TO HEAR IT SO WE'RE NOT DOING THIS

12   IN A VACUUM AS TO WHAT THE CURRENT STATUS OF THE LAW IS IN THE

13   NINTH CIRCUIT THANK YOU.

14             *MR. SULLIVAN:* THANK YOU, YOUR HONOR.

15             *MS. PRITIKIN:* THANK YOU.

16             *THE COURT:* HAVE A HAPPY HOLIDAY.

17             *MR. SULLIVAN:* YOU TOO.

18             *MS. PRITIKIN:* THANK YOU.

19        *(COURT IN RECESS AT 4:07 P.M.)*

20   ***  END OF REQUESTED TRANSCRIPT ***

21                          -OOO-

22

23

24

25

1      C E R T I F I C A T I O N

2    I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED

3 AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES

4 DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

5 TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE

6 ON DECEMBER 12, 2012; THAT SAID TRANSCRIPT IS A TRUE AND

7 CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE

8 FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF

9 THE UNITED STATES JUDICIAL CONFERENCE.

10

11 DATE:  MAY 8, 2013, AT SAN DIEGO, CALIFORNIA.

12         S/MAURALEE A. RAMIREZ

13         MAURALEE A. RAMIREZ
          OFFICIAL COURT REPORTER
14         RPR, CSR NO. 11674

15

16

17

18

19

20

21

22

23

24

25